PEOPLE v. SCANLON et al.

(Supreme Court, Appellate Division, Third Department. May 5, 1909.)

1. INDICTMENT AND INFORMATION (§ 160*)—AMENDMENT AS TO LOCALITY—INJURY CAUSING DEATH.

Code Cr. Proc. § 293, provides that the court may direct an amendment of an indictment to cure a variance between the allegation and proof in the description of any place, if the defendant cannot be prejudiced in his defense on the merits, on reasonable terms as to the postponement of the trial. In a prosecution for homicide by the negligent operation of an automobile near a certain village, an application at the opening of the trial to amend the indictment by substituting the name of another village in the same town was granted. Defendants did not claim to be surprised, or to have been misled, or that the change would embarrass them in the trial, nor was an adjournment asked. Defendants' preparation for trial must have acquainted them with the exact place where the injury was claimed to have been caused. *Held,* that the amendment was clearly within the court's discretion.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 515; Dec. Dig. § 160.*]

2. CRIMINAL LAW (§ 1036*)—APPEAL—OBJECTION NOT MADE BELOW—FAILURE TO PROVE FACTS ASSUMED BY ALL PARTIES.

In a prosecution for homicide by the negligent operation of an automobile, the evidence was undisputed that the injury occurred on a road in general use, and that it was a public highway seemed to have been assumed by all parties on the trial. *Held,* that it was too late on appeal to claim that there was no specific proof that the injury occurred on such a highway.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2641; Dec. Dig. § 1036.*]

3. CRIMINAL LAW (§ 808½*)—INSTRUCTIONS.

In a prosecution for homicide by the negligent driving of an automobile, the reading of the statute regulating the speed thereof was not error, and was in no way prejudicial to defendants' rights, as driving at a speed prohibited by law is evidence of negligence, and might have been so charged.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1811; Dec. Dig. § 808½.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CRIMINAL LAW (§ 728*)—REMARKS OF DISTRICT ATTORNEY—EXCEPTION—SUF-
FICIENCY.

Remarks of the district attorney in argument, to which exception is
taken, must be specifically pointed out, and a general exception should not
be taken to an improper statement in association with proper statements.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 728.*]

5. CRIMINAL LAW (§ 719*) — TRIAL — ARGUMENT OF DISTRICT ATTORNEY—BASIS
ON EVIDENCE.

In the absence of evidence on which to base the remark, it was improper
for the district attorney to state that there was a resemblance between
two men, which might account for a failure to recognize one of the de-
fendants in a crowd.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1669; Dec.
Dig. § 719.*]

6. CRIMINAL LAW (§ 706*)—TRIAL.

In a prosecution for homicide by the negligent operation of an auto-
mobile, a question whether it cost $15,000 was properly excluded, as an
improper attempt to give before the jury a fact to inflame their prejudice.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1661; Dec.
Dig. § 706.*]

7. HOMICIDE (§ 234*)—NEGLIGENT OPERATION OF AUTOMOBILE—CAUSE OF DEATH
—SUFFICIENCY OF EVIDENCE.

Evidence in a prosecution for homicide by the negligent operation of an
automobile held sufficient to sustain a finding that the vehicle in which
decedent rode was struck by the automobile.

[Ed. Note.—For other cases, see Homicide, Dec. Dig. § 234.*]

8. HOMICIDE (§ 74*)—NEGLIGENT OPERATION OF AUTOMOBILE—OTHER ELEMENT
CONTRIBUTING TO INTENT—EFFECT ON LIABILITY.

In a prosecution for homicide claimed to be due to negligently driving
an automobile into a buggy in which decedent was riding, the possibility
that the jerking of the horse was an element contributing to the accident
would not relieve defendants, if their negligence was the proximate cause.

[Ed. Note.—For other cases, see Homicide, Dec. Dig. § 74.*]

9. HIGHWAYS (§ 177*)—OPERATION OF MOTOR VEHICLES—NEGLIGENCE IN PASS-
ING BUGGY.

To attempt to pass a buggy within a few inches with a heavy motor
vehicle weighing from 3,000 to 4,000 pounds, going at the rate of 25 miles
an hour, is indefensible negligence.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 466; Dec. Dig. §
177.*]

10. CRIMINAL LAW (§ 742*)—TRIAL—CREDIBILITY OF WITNESSES—QUESTION FOR
JURY.

The appearance of the witnesses on the stand is for the jury to con-
sider in giving weight to their testimony.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 742.*]

11. HOMICIDE (§ 234*)—NEGLIGENT OPERATION OF AUTOMOBILE—CAUSE OF AC-
CIDENT—SUFFICIENCY OF EVIDENCE.

In a prosecution for homicide claimed to be due to the negligent opera-
tion of an automobile, evidence held to show that it was the car in which
defendants were riding that caused the accident.

[Ed. Note.—For other cases, see Homicide, Dec. Dig. § 234.*]

12. HOMICIDE (§ 74*)—NEGLIGENT OPERATION OF AUTOMOBILE.

The conviction of an owner of an automobile of manslaughter is not
justified, where it does not appear that he could have given directions to
his chauffeur, with whom he was riding, in time to have avoided the colli-
sion in question, and he appeared to be only in general control of the

chauffeur, who was not shown to have been in the habit of running so close to other cars as to cause danger without being corrected by the owner, knowing thereof.

[Ed. Note.—For other cases, see Homicide, Dec. Dig. § 74.*]

Appeal from Delaware County Court.

John Scanlon and Howard W. Albro were convicted of manslaughter in the second degree, and from the judgment, and from an order denying a new trial, they appeal. Affirmed as to defendant Scanlon, and reversed as to defendant Albro.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Edward J. Welch, for appellants.

Alexander Neish, for the People.

SMITH, P. J. Upon June 23, 1907, one Jared Francisco was driving toward the village of Arkville, in the town of Middletown, in the county of Delaware. He was driving a single horse attached to a buggy in which he was riding. He had with him a boy by the name of Harry Gordon. When within about one mile of this village, the right wheel of the buggy collapsed. Both Francisco and the boy were thrown, and the boy fell at the feet of the horse. By reason of injuries which he received from the kicking of the horse he died upon the succeeding day. At the time that this buggy wheel collapsed an automobile was passing, and it is claimed that the buggy was struck by the automobile and thereby caused to break down. These defendants have been charged by the jury with the negligent running of this automobile, whereby the collision was caused, and the death of the boy. The defendant Albro was the owner of the automobile, and was sitting upon the left forward seat. The defendant Scanlon was the chauffeur, and was driving the car. From this judgment of conviction these defendants have here appealed.

Before discussing the evidence I will consider some legal objections which are urged as against this conviction:

First. The indictment charges that this crime was committed near the village of Arena, in the town of Middletown, in the county of Delaware. The village of Arena is six miles from the village of Arkville, and within the same town. At the opening of the trial the district attorney made application to amend the indictment by substituting the name "Arkville" for the name "Arena." This amendment, it was objected, the court had no power to grant. By section 293 of the Code of Criminal Procedure it is provided that upon the trial of an indictment, when a variance between the allegation therein and the proof in respect to time, or in the description of any place, shall appear, the court may in its judgment, if the defendant cannot be thereby prejudiced in his defense upon the merits, direct the indictment to be amended according to the proof, on such terms as to the postponement of the trial, to be had before the same or another jury, as the court may deem reasonable. There was no claim by the defendants that they were surprised or had been misled by the indictment,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nor that they would be embarrassed in the trial of the indictment with the substitution made, and no request for any adjournment in order to meet any new state of facts. This matter was so conspicuous in that community that the defendants' preparation for trial must have acquainted them with the exact situation and the exact location where the injury was claimed to have been caused. It would in our judgment have been unreasonably technical to have refused the request of the district attorney, and it was clearly within the power of the court, under the provision of the Code cited, to grant the amendment. People v. Langley, 114 App. Div. 427, 100 N. Y. Supp. 123.

Second. The county judge in his charge to the jury called attention to the statute which prohibited a person operating a motor vehicle at a greater speed than 20 miles per hour. There was testimony in the case that the automobile was running at the rate of 25 miles per hour. It is claimed that there was no legal proof that this injury occurred upon a public highway; but no objection was made at the trial that this was not proven to be a public highway. The evidence discloses beyond a question that it was the highway generally used between Arkville and Margaretville and Roxbury. The inference is irresistible that the highway was a public highway, and the fact seems, in the absence of question, to have been assumed by all parties upon the trial of the indictment. It is too late, after such assumption and upon appeal, to claim that there was no specific proof of this fact. The authorities hold that driving at a rate prohibited by law is evidence of negligence, and it might have been so charged by the county judge. The reading of the statute, therefore, in no way constituted legal error, and was in no way prejudicial to the rights of the defendants upon the trial.

Third. Criticism is made of the remarks of the district attorney in the summing up of this case. From an examination of the record, however, I find no cause for criticism as to any remarks which were specifically pointed out by the defendants' counsel. It was improper for the district attorney to state that there was a resemblance between two men, which might account for a failure to recognize one of the defendants in a crowd, because there was no evidence in the case upon which the remark could be based. But this statement was associated with other proper statements, to which only a general exception was taken. The question asked by the district attorney as to whether this automobile cost $15,000 can hardly be defended. The fact had nothing to do with the merits of the case, and the question was properly excluded by the court. The practice of getting before juries facts to inflame their prejudice by improper questions has been condemned frequently by the courts, and where the case is a close case it often leads to a reversal of the judgment. In the case at bar, however, we are satisfied that the acts of the district attorney had no such influence upon the verdict as would justify a reversal of the judgment.

The defendants' main contention is that the verdict is unsupported by the evidence. Their contention is twofold: First, that the proof does not justify beyond a reasonable doubt the inference that the machine struck the carriage and thereby caused Gordon's death; sec-

ond, that it is not proven beyond a reasonable doubt that Francisco's wagon was struck by the defendant's car. Francisco had turned out of the road to the right. It was the left hind wheel which is claimed to have been struck. That wheel was not broken. The right hind wheel, however, was dished; that is, the hub was apparently pushed through the wheel, which caused the wagon to drop down and throw out its occupants. Francisco himself does not swear positively that the buggy was struck. There is evidence, however, that the buggy had been newly painted, and that upon the left hind wheel there were marks, and also upon the hind part of the buggy box. There is further evidence that the ground at that place showed that the buggy had been crowded over five or six inches, and that the right wheel had scraped up the turf where it had been pushed over before it collapsed. It is true that, after Francisco had partly turned out, the horse was leading back into the beaten track and was pulled suddenly out to the right. It is difficult to see, however, how that could have pulled the hind wheels in such a way as to cause them to scrape the sod for five or six inches as though pushed out of their place. Witnesses swear as to the tracks of these wheels and as to automobile tracks—some of them that they came within two or three inches, and some of the witnesses that they practically came together; that the automobile tracks showed no digression from the main traveled highway, and indicated no attempt on the part of the driver of the car to turn out in the least.

In view of this evidence, it might well have been found by the jury that the carriage was struck by the automobile and pushed over through the sod until it caused the right hind wheel to collapse.

The evidence does not make it clear whether or not the buggy was actually thrown over onto the sod and was afterwards tipped back, or whether it simply dropped to the ground after the wheel was crushed. The boy was apparently thrown out over the dashboard. It would seem as though there must have been something more than the mere collapsing of the buggy. Possibly the jerking of the horse was also an element which contributed to the accident; but that would not relieve the defendants, if the defendants' negligence were the proximate and efficient cause thereof.

The inference from the whole case, which seems to me irresistible, is that this buggy had gotten just beyond the beaten track of the road, and that the jerking of this horse back out of the road pulled the buggy somewhat back into the beaten track, and that in this way the collision was caused. This inference would explain why the boy was thrown forward over the dashboard and toward the forward part of the horse. The defendant Scanlon sought to make a close pass, without diverging in any way from the beaten track of the road. It is this reckless driving which is the cause of many accidents, and which ought to disqualify any chauffeur who practices it. With a heavy machine, weighing from 3,000 to 4,000 pounds, going at the rate of 25 miles an hour, it is indefensible negligence to attempt to pass a buggy within a few inches. Such driving cannot be too severely condemned.

A more doubtful question arises upon the defendants' contention

that it is not proven beyond a reasonable doubt that it was the car in which the defendants were riding that caused the accident. Upon the part of the defendants, the four persons who were in the car, both of the defendants and the wife of the defendant Albro and her mother all swear positively that they did not collide with any buggy at any time during that day. This evidence, however, must be read in the light of the interest which they have in behalf of the defendants, and also in the light of the fact that Mrs. Albro is sworn to have made an admission during the hearing before the justice of the peace the next day that it was she who looked back from the automobile after the accident occurred; and the chauffeur is sworn, when the automobile was finally stopped upon a telephone message to Margaretville, and the parties told that there had been an accident and the boy had been killed, to have asked whether the boy was dead, which might be deemed to indicate that he had some knowledge of the injury to the boy other than that conveyed by the information then given. Other evidence in behalf of the defendants is to the effect that there were no marks upon the automobile to indicate that there had been any collision, either upon the lamps or upon the mud guard, which must have struck the wheel if the collision had occurred. Against this evidence, however, the proof seems to be convincing. This accident occurred shortly after 3 o'clock upon one Sunday afternoon. It is admitted that about this time the defendant's machine passed the point in question. About that time there were four machines which passed through Arkville. From the evidence, the first two were touring cars, each with four persons, and the second two were single cars. It is proven without dispute that of these four cars the defendant's car first left Arkville toward the place of the accident. That was followed by the second touring car, which in turn was followed by the two runabouts. The proof shows that this collision occurred between Francisco's buggy and the first touring car. This clearly appears, both from Francisco and from Kelly, who was a short distance back. When the second touring car came to the place of the accident it stopped. The ladies left the car, and did what they could for the boy, while the car went on for the purpose of getting a doctor. Within a very short time thereafter the two runabouts reached the point of the accident. All the witnesses, with one exception, swear that it was a dark car, and the defendant's car was a Brewster green, which would answer the description. It is reasonably well established that for some time prior to the passing of these four cars there had been no automobile passing that point. The appearance of the witnesses upon the stand was for the jury to consider in giving weight to their testimony. The circumstantial evidence in the case seems to me fully to corroborate the evidence of Francisco to the effect that these defendants were in the car which caused the collision. I do not attribute much importance to the fact that upon the next morning Francisco failed to recognize these defendants in justice's court. Common experience has taught us that with the usual automobile attire, after a dusty day's ride, it would be difficult for one to recognize his own brother.

These conclusions lead to the affirmance of the conviction of the de-

fendant Scanlon, the chauffeur; but the rights of the defendant Albro rest upon a different basis. Whatever condemnation we may feel to give to his act in not stopping the car and rendering aid to the unfortunate victims, we cannot hold his conviction for a crime without evidence. He was not running the machine. He could not turn it the few feet that were necessary to avoid this accident. Scanlon testifies that his instructions were to give full leeway to any passing vehicle. Albro had the right to assme that, with the street sufficiently broad to make an easy passage, the chauffeur would exercise the proper judgment and turn out his machine sufficiently to avoid a collision. In the few seconds of time which elapsed after he might have seen that a collision was to occur, he could not give directions which would avoid the collision. The whole thing was, as it were, instantaneous, in the control of the chauffeur, but in no way in the control of the owner of the car. He had not the wheel in hand. It is true that the chauffeur was under the control of the owner, but that means the general control. He might give general directions. It would be impossible, however, to give specific directions as to the manner of driving upon each separate piece of road over which they were passing. If it were the chauffeur's habit to run so close to other cars as to cause danger, and Albro knew of it, without correcting it, he might be held liable for this negligence; but there is not one word of evidence to the effect that this was the habit of the chauffeur, and Albro's conviction must rest upon his failure within a second of time to give directions, which could not even be comprehended and acted upon, if given, in time to have avoided the accident. It is not contended that for the purposes of a criminal prosecution the negligence of Scanlon could be attributed to the defendant Albro.

It seems clear, therefore, that the conviction of the defendant Albro was unjustified, and that conviction must be reversed.

The judgment of conviction of the defendant Scanlon, and the order denying a new trial as to him, are, therefore, affirmed. The judgment of conviction of the defendant Albro, and the order denying a new trial as to him, are reversed, and a new trial granted.

Judgment of conviction of defendant Scanlon, and order denying new trial as to him, affirmed.

Judgment of conviction of defendant Albro, and order denying new trial as to him, reversed, and new trial granted. All concur.