## STORY v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted November 1, 1926. Decided December 6, 1926.)

No. 4457.

1. **Automobiles** ⟨⟩351—Indictment for manslaughter by striking with automobile held not wanting in definiteness.

Indictment for involuntary manslaughter, charging that defendants "erroneously, violently, wantonly, recklessly, and negligently did strike, hit, and beat him, the said [deceased], with an automobile," held not defective for want of precision and definiteness.

2. **Automobiles** ⟨⟩323—Owner, placing automobile in hands of reckless driver, with whom he rides, without protest against negligence causing death of another, is criminally liable as "principal" (Code, § 908).

An owner, who puts a dangerous instrumentality like an automobile in immediate control of a careless and reckless driver, and who sits by his side and permits him without protest to so negligently operate the car as to cause the death of another, is liable as "principal" with the man at the wheel, particularly in view of Code, § 908.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Principal.]

3. **Automobiles** ⟨⟩355(13)—Evidence held to sustain finding of criminal carelessness of automobile owner.

In prosecution for involuntary manslaughter, evidence held to sustain finding of criminal carelessness of automobile owner.

Appeal from the Supreme Court of the District of Columbia.

Vernon S. Story was convicted of involuntary manslaughter, and he appeals. Affirmed.

J. A. O'Shea, of Washington, D. C., for appellant.

Peyton Gordon and J. J. O'Leary, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appellant and James O'Connor were convicted in the Supreme Court of the District of Columbia under the ninth count of an indictment charging them with involuntary manslaughter and were sentenced to five years in the penitentiary. The indictment charged that O'Connor was operating and driving an automobile, and that Story and O'Connor "feloniously, violently, wantonly, recklessly, and negligently did strike, hit, and beat him, the said Charles F. Jarvis [the deceased], with the said automobile," etc.

The evidence for the government, stated in narrative form, is substantially as follows:

Jarvis, prior to the occurrence, was possessed of a gold watch and a small sum of money. Early in the morning of November 16, 1924, he was in an obviously intoxicated condition, when he was observed by O'Connor and Story, who also had been drinking and were riding around in Story's automobile, with Story at the wheel. The car was stopped, and O'Connor invited Jarvis to take a ride. Jarvis accepted the invitation, and, according to a statement signed by O'Connor shortly after the occurrence and which Story in a similar statement characterized as true with two exceptions, O'Connor "helped the drunken man into the front seat, where Story was at the wheel." After proceeding a short distance, Story stopped the car and directed O'Connor to put Jarvis on the back seat.

According to the signed statement of Story, which he testified was true, the three men took several drinks of liquor and finally drove out to Kane's Lane and stopped. There the three men got out of the car, and Jarvis was so drunk he fell in a ditch. Story pulled him up, and Jarvis then started to walk up the lane, in the direction the car was headed. Story said to O'Connor, "Let's go," whereupon O'Connor asked permission to drive, and Story, according to his statement, asked if he had a permit. O'Connor said he had, so Story allowed him to drive. Jarvis then was about 50 yards up the road, in front of the car. O'Connor was at the wheel, with Story sitting beside him. Just as they got up to Jarvis, he staggered in front of the car and was run over. "The car was going about 20 or 25 miles an hour at the time that the man was hit." While Story and O'Connor were attempting to turn the car around, police officers arrived, and asked each of them "what they run over that man for, and they both said, 'What man?'" No money was found on the body of Jarvis, and his watch was found in the overcoat pocket of O'Connor.

In O'Connor's signed statement he admitted taking the watch, and charged Story with taking the money. Story, both in his statement and testimony, disclaimed knowledge of the taking of the watch, and denied taking the money. There also was evidence to the effect that Kane's Lane is very narrow at this point, and that it would be necessary for a pedestrian to step outside the road to avoid being run down.

Both O'Connor and Story took the stand. Story testified that, just prior to seeing Jarvis, he and O'Connor purchased half a pint of liquor "and started riding out H street, and came to First and H street Northeast; on the right corner there was a man staggering around, and he fell just as we got past him, and I stopped the car right quick, and O'Connor he run and pulled him up and holloed back to me that the man was drunk. * * * *" After being taken into the car, Jarvis "pulled a bottle out of his pocket and handed it to O'Connor, and he passed it to me and I took a drink. * * * We rode out H street, and, when we got to the lumber yard, there is a little lane turns there; I later found out it was Kane's Lane, and O'Connor says, 'Turn up in here, Story, and we will all have a drink.'"

Story had never been in this lane. The three men got out of the car, and Story walked a little to one side, and, when he returned, he heard Jarvis say to O'Connor, "Oh, you done me wrong." Thereupon "O'Connor turned him loose, and he sat down on the bank, on the left-hand side of the car, and the grass was wet down there." Story pulled Jarvis up, and "he said, 'Let me walk; I will be all right in a few minutes;' and I [Story] turned him loose. After saying three or four words to him; I forgot what I said, I turned him loose and he started walking down the lane. O'Connor says, 'Tell him to get in the car;' and I says, 'He says he wants to walk; he wants to sober up;' and I says, 'Let us turn around in the car;' and I started to get back to the wheel, and O'Connor says, 'Let me drive, Story; you can't turn around with one arm.' I left him drive."

It is unnecessary to detail the other evidence in the case.

[1] The first assignment of error is based upon the refusal of the court to sustain the demurrer to the indictment, the contention being that it is lacking in that degree of precision and definiteness necessary to charge a crime. This contention is without merit. The indictment charges that O'Connor and Story feloniously, violently, wantonly, recklessly, and negligently struck Jarvis with the automobile driven by O'Connor. Under these allegations, each was a principal.

[2] If the owner of a dangerous instrumentality like an automobile knowingly puts that instrumentality in the immediate control of a careless and reckless driver, sits by his side, and permits him without protest so recklessly and negligently to operate the car as to cause the death of another, he is as much responsible as the man at the wheel. If Story did no more than aid and abet O'Connor in his criminal negligence, Story was properly charged as a principal under section 908 of the Code, which provides that "in prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories," etc.

[3] In the present case, the automobile was the property of Story. He and O'Connor had been drinking, when they discovered Jarvis in such an intoxicated condition that he hardly could stand. Jarvis was invited into the car, and, although having the responsibility of driving the car, Story continued drinking with the two other men. They turned into a narrow lane, where all got out of the car, which up to that time had been driven by Story. Jarvis fell into a ditch, was pulled out by Story (according to Story's testimony), and started up the lane in the direction the car was headed. Knowing that Jarvis was so intoxicated he hardly could walk, that the lane was narrow, and that even the most careful driver would have difficulty in passing Jarvis, Story placed his car under the control of another drunken man, and, without protest, permitted him to attain a speed of from 20 to 25 miles an hour at the time Jarvis was struck. If a jury may not find criminal carelessness from such conduct, it is difficult to perceive what conduct would justify such a finding. And such is the view of other courts.

In Com. v. Sherman, 191 Mass. 439, 78 N. E. 98, Sherman had been complained against for driving a car in excess of the speed limit. Under the agreed statement of facts, the car was being driven by a chauffeur, and Sherman was one of several persons sitting in the tonneau. The appeal was from the refusal of the trial court to rule that, upon the agreed facts, the defendant could not be convicted. In sustaining this action the appellate court said: "In our opinion those facts warranted the inference that the owner knew and allowed his vehicle to be illegally run. The case so made out is a prima facie case only."

In Ex parte Liotard, 47 Nev. 169, 217 P. 960, 30 A. L. R. 63, Liotard, with another, had been charged with manslaughter, in that, while under the influence of intoxicating liquor, they so operated an automobile as to strike and kill another person. It appeared that the car belonged to Liotard, and at the moment of the occurrence was being operated by the codefendant, with Liotard on the running board. The court said: "While it does not appear that petitioner gave Krites [the codefendant] instructions to operate the car, it is an undisputed fact that the petitioner was present while Krites was at the wheel and while the engine was in action. Krites admits that he was at the wheel at the time of the tragedy. He was in control of the car by consent of the petitioner. Petitioner was chargeable with knowledge of Krites' condition. No one would contend that the owner of a car would not be liable for injuries resulting from his operating it while intoxicated. How, then, can he escape the consequence when he sits by and permits another, who is intoxicated, to operate it? * * * One who is so careless of the rights of others as to use a dangerous instrumentality while incapacitated by drink, or who permits others to do so, as here shown, invites the consequences. He must pay the penalty." See, also, Reg. v. Longbottom, 3 Cox C. C. 39.

In People v. Scanlon, 132 App. Div. 528, 117 N. Y. S. 57, relied upon by appellant, a chauffeur and the owner of the car had been convicted of manslaughter. The tragedy was the result of driving too close to a vehicle in passing it. The conviction was sustained as to the chauffeur, but reversed as to the owner; the court saying: "If it were the chauffeur's habit to run so close to other cars as to cause danger, and Albro [the owner] knew it, without correcting it, he might be held liable for this negligence; but there is not one word of evidence to the effect that this was the habit of the chauffeur, and Albro's conviction must rest upon his failure within a second of time to give directions, which could not even be comprehended and acted upon, if given, in time to have avoided the accident."

There was no abuse of discretion by the

trial court in refusing to grant a severance, requested by appellant, as the joint character of the acts of O'Connor and Story rendered a joint trial peculiarly appropriate, and a severance might have resulted in a miscarriage of justice. While the charge of the court apparently was satisfactory to counsel at the time it was given, some fault now is found with it. We have examined this charge with care, and find that it fully and fairly states the law of the case.

Finding no error in the record, we affirm the judgment.

Affirmed.