Beverly Ann Eager and Howard Eugene Hill

*v.*

State of Tennessee.

*(Nashville,* December Term, 1958.)

Opinion filed March 12, 1959.

Rehearing denied May 1, 1959.

RAY W. CHURCHILL and LONNIE E. HENDERSON, Memphis, for plaintiffs in error.

JAMES M. GLASGOW, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs in error were jointly indicted for the second degree murder of Donald McQuistan with an automobile on January 18, 1958. They were found guilty of involuntary manslaughter and their punishment was fixed at not more than five years in the State Penitentiary. Appeals have been seasonably prayed, the case briefed and arguments heard. We now have the matter for disposition.

About 8:30 o'clock at night on January 18, 1958, Mc-Quistan, a 17-year-old sailor, and two companions were walking on the right side of a highway in Shelby County when McQuistan was struck by an automobile and as a result of the lick he received by this automobile he was dead by the time he reached the hospital. The deceased was walking nearest the pavement at the time he was

struck from the rear by a light colored 1957 model Ford automobile. There is proof in the record which the jury could believe that at the time he was struck he was about 2 feet off the pavement and that when the car struck him it swerved further off the road and then back. It is also testified by one of his companions that the car was going from 50 to 60 miles per hour in a 30 mile speed zone. The car did not stop after striking this boy but continued on and neither of the occupants of the car was identified. The boys immediately reported the accident to the police after seeing what had happened.

These boys had been in town that afternoon while on liberty and had secured whiskey and other things and were at least partially intoxicated. This fact though is not an excuse for the homicide under the facts and circumstances as detailed by the evidence herein. The boy was horribly maimed. His skull was broken causing it to separate about one-half inch between the front and back of the head. A small piece of bone had been driven into the brain. On the front of the torso, below the diaphram, the skin was darkened on account of a large abrasion. Internally, there was torn tissue near the kidney and spleen. About six or seven inches above the ankle joints of both legs, there were broken bones and the legs were angulated. It was testified that these various wounds were the cause of his death.

The police hunted through the night for the driver of this automobile but were unable to find him. Early Sunday morning Mrs. Eager appeared at the police station and reported that her car appeared to have been in an accident the night before. As a result of this report a factual development, as follows, was brought out.

On the evening before this accident happened Mrs. Eager and her husband had had an argument over the drinking of beer. She, as a result of this argument, left home about 7:00 o'clock and drove to a tavern or grill, known as "Port Hole", and there continued to drink beer. Her car was a 1957 model Ford which was painted light blue and cream colors. While at the "Port Hole" she drank beer and met the co-defendant Hill. They talked and drank beer together. According to one of the witnesses, Hill's sister-in-law, Mrs. Eager and Hill left the "Port Hole" in a blue and cream colored 1956 or 1957 model Ford car at approximately 7:40 o'clock in the evening. She said that Mrs. Eager was driving. Both the defendants talked to this witness by telephone after leaving at between 8:30 and 9:00 o'clock that night. They invited this witness and her husband to come over to Hill's home, but they did not come.

Mrs. Eager gave a statement to the police (it is in the record and is filed as an exhibit) in which it is shown that she clearly had difficulty in recalling the events of the night before which the jury could have clearly found was due to her intoxication. In this statement though she did remember that Hill was in the car with her when they struck something and that he told her that it was a big dog and that if she said nothing about it, everything would be all right. She also recalled that the fan on the car sounded like it was scraping metal, after having struck whatever it was they hit, so that she stopped the car and she and Hill straightened the blades so as to eliminate the noise. After this accident they parked the car at the "Port Hole" and they, with others, went to a dance hall where they remained until it closed.

Among the witnesses called by the State was one Johnny Hines who was a member of this party at the dance hall. Mrs. Eager likewise remembered that after this accident they passed this place where she remembered her car striking something and an ambulance was parked there flashing its red lights. She also remembered going to the house with Hill and other State's witnesses and that she had difficulty in getting up on the porch because she could not find the steps by herself, as she said because she was wearing high-heels so that she could not climb easily. When the State's witness Hines said he had to leave to pick up his date Mrs. Eager asked him to take her home. He told her that he could not but he agreed to take her to Millington. He took her back to the ''Port Hole'' where her car was parked. She drove home and parked in the driveway behind the car of the family living upstairs over where she lived.

Early the next morning, that is Sunday morning, January 19, 1958, she heard the family upstairs preparing to leave and as a result she went out to get her car out of the driveway which was blocking the exit to this family's car. When she went down to move it she saw that it had been in an accident. She went back in the house and described this condition to her husband and then she went to the police station to ascertain if anyone had been hurt and told them about her car having been in an accident. On her way to report this to the police (she went in a taxi) the taxi driver informed her that a sailor had been killed the night before.

After reporting this matter to the police they examined her car and found that the hood was bent, jammed and warped toward the windshield so that it bucked out of

place on the side opposite the driver's seat. The grill was damaged, requiring the installation of new coils. The fan blades were bent. There were red stains that looked like blood and what appeared to be brain tissue on the paint on the front of the car.

A jacket which the dead boy had on was stained with blood and tissue. This was sent to the Federal Bureau of Investigation. Samples of the blood and tissue found on the car as well as paint removed from it, were forwarded to the Federal Bureau of Investigation laboratory likewise. The blood samples taken from the Eager car and the blood on the decedent's jacket corresponded and was type AB, which is one of the rarest blood types in the United States. Less than five per cent of the population has AB type blood. The gray substance appearing on the car which looked like brain tissue came from a human being. The paint sample from the Eager car and the paint smears found on the elbow of the jacket of decedent were of the same type, color, composition and texture. The expert who made this examination testified that the paint could have come from the same source. No other traffic injuries or deaths were reported in or around the scene of this accident or in that vicinity during the night this accident happened.

All of these facts which were testified to by State's witnesses, if believed by the jury, were sufficient to make out the State's case. The plaintiffs in error did not testify at the trial.

When this case came on for hearing, on May 26, 1958, Hill filed a plea of *autrefois acquit,* and Eager filed a plea of former jeopardy. To all intents and purposes the same result would be reached by either plea. Upon the

State's motion these special pleas were stricken because they had not been filed according to the rules of court some days before the case was set for trial. After the indictment was read to the jury the plaintiffs in error again announced that they plead as they attempted to above do by these special pleas. Again the court over-ruled these pleas, out of the presence of the jury, and then entered pleas of not guilty for the plaintiffs in error and tried them to the jury on the state of facts heretofore related.

The assignments of error are many, but they can be and will be treated by us in groups because they more or less take up the same proposition, as we see them.

■ The first thing for our consideration is whether or not the trial court erred in striking these special pleas of *autrefois acquit* and former jeopardy because they were not filed within the time as provided by the rules of the court. Of course the rules of the court and reasonable rules as these were are absolutely necessary for the operation and conduct of the court. Normally pleas of this kind should be filed, unless there is a reasonable excuse, within the time that the rules of the court here provide. When technical mistakes or mistakes in not filing a pleading that goes to the constitutional right of the defendants are made the rules should be overlooked. *United States v. Buckner,* D.C., 37 F.2d 378. The court should consider the pleas and act on them. It is true that in *McNulty v. State,* 110 Tenn. 482, 75 S.W. 1015, this Court held that it was not error to strike a plea similar to those here filed when it was filed in the course of trial. This Court though did, in the McNulty case, take up the plea there filed and held properly that the plea would not

have availed McNulty anything even if it had been filed before the trial and considered by the trial court. We will follow the same procedure here.

The substance of these pleas was that they had been theretofore tried on indictments for misdemeanors which stated on their face that it happened in the same way and time that the indictment under which they were here called to answer was, and that that indictment charged them with unlawfully failing to stop after an accident and give their names, etc., and that on the trial of this indictment that these two plaintiffs in error had been found not guilty by a jury, and thus it was that in one instance it was said that they had been acquitted and in the other that they had been put in former jeopardy.

There is quite a conflict in the authorities over the country as to whether or not an acquittal or a conviction of a minor offense included in a greater will or will not bar prosecution for the greater where the court in which the acquittal or conviction was had has jurisdiction to try both offenses. The question though is settled in this State and we find and will hereinafter relate that this rule is now most generally followed in a majority of the States. In *Smith v. State,* 159 Tenn. 674, 21 S.W.2d 400, 402, this Court said:

"The offense of driving an automobile while under the influence of an intoxicant is not an ingredient of the offense of homicide committed by the reckless driving, and is an unrelated offense. The commission of the misdemeanor was complete, under the facts proven herein, before the homicide was committed and was continued thereafter. Cases holding that conviction for a homicide committed with a pistol unlawfully car-

ried is no bar to a subsequent conviction for unlawfully carrying a pistol clearly support this distinction. *State v. Parker,* 81 Tenn. 225; *Heaton v. State,* 130 Tenn. 163, 169 S.W. 750.''

This statement was made following an opinion by this Court in *Dowdy v. State,* 158 Tenn. 364, 13 S.W.2d 794, wherein the Court fully considered the principle of *autrefois acquit* or double jeopardy and set forth various rules necessary to be applied in considering such pleas and said: (the fourth of these rules is the one that is applicable to a factual situation as here involved).

''4. But when the same facts constitute two or more offenses wherein the lesser offense is not necessarily involved in the greater, and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although the offenses were both committed at the same time and by the same act.''

Other of our cases which go along with this principle and apply it to the facts of the case wherein the conclusion is inescapable as stated and quoted above from *Smith v. State* that this does not apply to a factual situation here, are *State v. Coffman,* 149 Tenn. 525, 261 S.W. 678, 33 A.L.R. 559; *State v. Covington,* 142 Tenn. 659, 222 S.W. 1; *Usary v. State,* 172 Tenn. 305, 112 S.W.2d 7, 114 A.L.R. 1401, and others.

■ The question which has been considered by the Courts under such situations, and the Courts have concluded, is that the offenses are not the same if upon the trial of one, proof of an additional fact is required, which

is not necessary to be proved in the trial of the other although some of the same acts may be necessary to be proved in the trial of each. In other words it seems that the double jeopardy proposition is directed to the identity of the offense and not to the act. This principle was applied in the following automobile accident cases either for drunk driving or reckless driving out of which they have been convicted or acquitted in the one and still held that the pleas were not good in the other. *People v. Skarczewski,* 178 Misc. 160, 33 N.Y.S.2d 299; *State v. Thatcher,* 108 Utah 63, 157 P.2d 258; *Powell v. State,* 134 Tex.Cr.R. 244, 114 S.W.2d 894; *Commonwealth v. Jones,* 288 Mass. 150, 192 N.E. 522; *State v. Midgett,* 214 N.C. 107, 198 S.E. 613, and *State v. Fields,* 221 N.C. 182, 19 S.E.2d 486, and others.

█ Thus it is that we are forced to the conclusion that the pleas filed by these respective parties would not have availed them anything even if they had been filed within the rules of court and considered by the court. On May 12th, these cases were set for May 26th, on the application of the plaintiffs in error. Thus it is that they knew at least two weeks in advance when the cases would be set and there is no reasonable excuse shown for them not complying with the rules of Court in filing these special pleas in advance. It is for this reason that we do not doubt that the trial judge got a little impatient with counsel for the delay in filing these pleas and made some remarks to counsel which should not have been done, to the effect that, ''was he not taught that in his first year of law school''?, or something of the kind, and then at another point in the absence of the jury) he told counsel to ''shut up''. Things of this kind probably irritated the trial judge but this of course did not prejudice the jury.

There is nothing to show that there was any prejudice of the plaintiffs in error's rights by these statements of the trial judge. The Attorney General made some slighting remarks about counsel in his argument to strike these pleas which of course should not have been made because the trial of a case is not a place for counsel to express his feelings for opposing counsel. When things of this kind are done the trial judge should warn the parties and if it is continued deliberately then fine them for contempt of court. Of course a trial judge has many things to try his patience and those of us who have been trial judges know that this is true and we must steel ourselves as trial judges not to let things of the kind get on our nerves and cause us to make remarks to counsel that we would not otherwise make.

█ Another question is made in the argument and assignments which is, that the trial judge asked the State if it wanted to show venue by this witness. It is argued that the trial judge here is assisting in the trial of cases. In the first place it is the duty of the trial judge, and he does, and we cannot see anything to the contrary here, to try to do justice to both the State and to the defense and in doing so it is perfectly proper to ask a question of the kind because it may save the trying of the case again. There is no error in this and no prejudice done defendants by the suggestion and the way the question was asked of proving one of the elementary steps that is necessary in a trial of this kind. And when the State might overlook it it is not out of order at all for the trial judge to ask if that should be done. In doing so he is not assisting the attorney general or the State in trying the case, he is just trying to see that justice is done. The charge herein and the conduct of the trial too shows the

absolute fairness of the court to these parties. The case was tried according to the law and evidence.

The theory of the State in trying these lawsuits is that the plaintiffs in error, one of them, was driving an automobile while intoxicated and the other was along present and aiding and abetting and while thus driving the automobile in this condition at the speed it was and the place where it happened that the decedent was killed. This theory and method of trying a lawsuit if sustained by the evidence as found by the jury, which we think it was, is supported by our case of *Wade v. State,* 174 Tenn. 248, 124 S.W.2d 710.

There is ample proof herein that Mrs. Eager was the driver of this car. This proof comes about by State's witnesses who said that she got under the steering wheel of the car and drove off when they left the "Port Hole" which was not very long before this accident happened. This proof is not contradicted. There is plenty of other proof that both of these parties were in this automobile at that time and that the man said to the woman, in effect, "You just hit a big dog, go on, drive on, and no one will know the difference", and the further fact that he helped her fix the fan afterwards connects the two parties together in the event.

Wharton's Criminal Law and Procedure, Vol. 3, (Anderson) at page 162, has this to say:

"There is considerable authority for the proposition that a person who aids and abets in the commission of the offense of driving or operating a motor vehicle while under the influence of intoxicating liquor may be tried and convicted as a principal, although the

actual driving or operating was done by another person. One, who, being in the possession of an automobile and in position to determine who shall operate it, places the vehicle in the hands of an intoxicated person, sits with the latter, and permits him to operate the vehicle without protest, aids and abets the offense of driving while intoxicated and may, as an aider and abettor, be convicted of the offense, provided he knew of the intoxicated condition of the person whom he thus permitted to drive.''

■ Thus it is that when one sits by the side of another and permits him without protest to operate the vehicle on a highway in a state of intoxication as the jury was clearly warranted that these people were doing herein, the one sitting by is as guilty as the man at the wheel. *Story v. United States,* 57 App.D.C. 3, 16 F.2d 342, 53 A.L.R. 246, *certiorari* denied 274 U.S. 739, 47 S.Ct. 576, 71 L.Ed. 1318; 5 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed. sec. 2930, p. 67; 9-10 Huddy Cyclopedia of Automobile Law, 30, 51; 5 A.J. 912. This seems to be the general principle and we see no reason why it is not sound.

■ In one of the assignments of error it is insisted that the trial judge erred because he did not give a charge on circumstantial evidence, although no special request was submitted to the trial judge therefor. Our case of *Bishop v. State,* 199 Tenn. 428, 287 S.W.2d 49, is relied on as authority for this insistence. In the Bishop case we held that where the suit was tried exclusively on circumstantial evidence then the trial court was bound to give the charge without the request for the instruction. However in this case there was extra judicial statements as refer-

red to above, given to the officers by these parties and this is almost the same as a confession and under such circumstances the evidence would be original or direct evidence and therefore there is no necessity for a charge on circumstantial evidence.

█ The question of lack of intention of the plaintiffs in error to commit a homicide has been heretofore considered many times by this Court. In *Rogers v. State*, 196 Tenn. 263, 265 S.W.2d 559, 560, this Court quoted with approval from an earlier case in this State as follows:

"* * * if the act done was an unlawful act, and the doing of it was directly perilous to human life, and so known to the wrong-doer, that then there is implied such a high degree of conscious and willful recklessness as to amount to that malignity of heart constituting malice. The result may not have been intended, yet the deliberate and conscious doing of an act, the probable consequences of which was death, amounts to murder at common law. This is the doctrine of *Lee v. State*, (41 Tenn. 62, 66), and it is fully supported by the common law authorities."

Under the factual situation in the present case these parties clearly could have been convicted of murder in the second degree, that is what they were indicted for and it seems to us that in the verdict of the jury leniency has been lended them and they have been given the benefit of all doubt by the verdict.

We have very carefully read this record, the able briefs and authorities therein cited in addition to many others. No recent case has created so much discussion among the various members of this Court in conference and out.

After fully considering this and debating it among ourselves, for the reasons above set forth, we conclude that there has been no reversible error committed herein and the judgment of the trial court must be affirmed with costs.

NEIL, CHIEF JUSTICE (concurring).

I respond in this concurring opinion to the contention of plaintiff in error, Hill, that his conviction cannot be sustained based upon the State's theory that he was aiding and abetting Mrs. Eager in the crime as charged in the indictment. The argument is made that his presence in the car, and not operating it, does not sustain the charge against him. If this were the sole evidentiary fact the argument would be most persuasive, if not entirely convincing. Frankly I could not agree to affirm this conviction if the evidence supported this argument of counsel. But the evidence, as pointed out in the majority opinion, reveals a degree of cooperation between Hill and his co-defendant both prior to and at the time of the accident.

The citation from Wharton's Criminal Law and Procedure, Vol. 3, at page 162, is peculiarly applicable to this case and cannot be seriously controverted when applied to the facts detailed in the majority opinion. The general rule there stated rests upon the authority of *Story v. United States,* appealed from the District of Columbia Court of Appeals, and reported in 57 App.D.C. 3, 16 F.2d 342, 53 A.L.R. 246. The facts are almost identical with the case at bar. It will be noted that the Court distinguishes *People v. Scanlon,* 132 App. Div. 528, 117 N.Y.S. 57, wherein there was a reversal on the ground that the proof showed no culpable or criminal negligence by the

chauffeur which was imputable to the owner in that the latter had failed to give timely warning, etc. There are other cases cited in the annotations involving criminal liability for accidents resulting from the illegal operation of an automobile as in *Moreland v. State,* 1927, 37 Ga. App. 180, 139 S.E. 361.

Considering the case of *Story v. United States,* supra, liability of one who occupies an automobile with a drunken driver is dependent upon the degree of cooperation between them. The criminal negligence of the drunken driver is imputable to drunken occupants of the car when the evidence shows some degree of concert of action. Moreover the majority opinion is sound as holding that the defendant, Hill, is equally liable with with Mrs. Eager as "one who aids and abets" another in any criminal transaction.

"A person is a party to an offense if he either actually commits the offense or does some act which forms a part thereof, or if he assists in the actual commission of the offense or of any act which forms part thereof, or directly or indirectly counsels or procures any person to commit the offense or to do any act forming a part thereof." 22 C.J.S. Criminal Law sec. 79, p. 143.

We can readily visualize a situation where one might be present in a car, and be more or less under the influence of an intoxicant, who should not be held to be guilty as one who aids and abets in the wrong of a drunken chauffeur. In all such cases the party accused of crime on the theory that he aids and abets another in a criminal transaction, and even a common law act of negligence, the State must show that he not only failed to protest against the alleged wrongs but that he had an ample

opportunity to do so, and finally that he was in some manner a participant in the wrongful act, which brought about the death or injury to another.

It is argued that there was no intention by these defendants to harm anyone. Conceding that neither intended to commit the crime of manslaughter, yet there is no escape from the conclusion that an intention to commit an unlawful act may be reasonably imputed to them by reason of their conduct. In *Wade v. State*, 174 Tenn. 248, 124 S.W.2d 710, 711, it is said:

"Involuntary manslaughter necessarily negatives, of course, any intent on the part of the accused to kill another, but does not negative an intent to do the unlawful act, or the act not strictly unlawful in itself, but done in an unlawful manner and without due caution. Hence, one may be an aider and abettor in involuntary manslaughter because of a common purpose to participate in the unlawful act the natural and probable result of which was to kill another", citing cases.

Thus as between Hill and his co-defendant there was a voluntary association in a night of drunken revelry, she driving an automobile with Hill's permission, if not his actual encouragement, from one beer tavern to another, wholly indifferent to any consequential injury to others. In so doing each was cooperating with the other in an unlawful act and are equally guilty of this crime.

I concur in the majority opinion by Mr. Justice Burnett. It is clear and concise upon every issue. The question of legal liability cannot be viewed in the light of any hypothetical or imaginary situations.

## On Petition to Rehear.

BURNETT, JUSTICE.

We have before us a courteous, dignified and thoughtful petition to rehear.

Upon reading the authorities relied on by us in our original opinion it will be seen that they support the conclusions there reached under the facts in this case. These authorities are sound and applicable herein. We. do not herein go beyond their holdings.

The petition now before us again seeks to argue the facts which were so ably argued heretofore. There is no escape from our original holdings as to these facts.

We cannot anticipate what might happen in other cases. Every case must be bottomed on its own showing with applicable law correctly applied.

There are no new authorities cited.

The petition must be overruled.