STATE of Tennessee, Appellee,

v.

James A. MAINS, Appellant.

STATE of Tennessee, Appellee,

v.

Andrew MAINS, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville. .

March 12, 1982.

Permission to Appeal Denied
by Supreme Court June 1, 1982
as to Both Cases.

Max E. Wilson, O. H. Wilson, Mountain City, for appellants.

William M. Leech, Jr., Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, Lewis W. May, Dist. Atty. Gen., Mountain City, David Crockett, Asst. Dist. Atty. Gen., Elizabethton, for appellee.

OPINION

DUNCAN, Judge.

Appellant James A. Mains was convicted of vehicular homicide, and his brother, appellant Andrew Mains, was convicted of aiding and abetting vehicular homicide. Each appellant received a penitentiary sentence of two (2) years.[1] In this appeal, the appellants attack the sufficiency of the evidence, complain of the district attorney general's argument to the jury, and contend that the trial court erred in denying their applications for probation. We find no reversible error.

On December 16, 1979, appellants James and Andrew Mains, the victim Lester Vines, James Potter and Joe Greer were drinking beer and whiskey during the course of the afternoon at different locations in Tennessee and North Carolina. At approximately 3:40 p. m. on that afternoon, they ended up at a location in Johnson County, Tennessee, within three hundred (300) feet of the North Carolina line on Tennessee Highway 67. They parked their cars on the shoulder of the highway. Appellant Andrew Mains and the victim, Lester Vines, had been arguing during the course of the afternoon, and after they parked their cars Andrew and the victim engaged in a fight. Andrew knocked the victim down, picked him up and knocked him down again. James Mains got behind the wheel of his car and Andrew entered the car on the passenger's side. James then drove his vehicle over the prostrate body of the victim, dragged the body approximately eighty-seven (87) feet, and then stopped, all of which resulted in the death of the victim.

We need not detail the evidence regarding the appellants' intoxication. Suffice it to say that the evidence conclusively established that the appellants and the victim, as well as their companions Potter and Greer were all intoxicated at the time of this event.

Appellant James Mains argues that the evidence failed to establish that the victim's death was the proximate result of his (James Mains's) intoxication.

The appellants' testimony at trial was to the effect that during the fight between Andrew and the victim, Andrew knocked the victim down beside James's automobile. James testified that in an effort to take Andrew away from the altercation, he pushed his brother into the automobile on the passenger's side of his (James's) vehicle, then ran to the driver's side, got behind the wheel and started to drive away. He said James Potter began fighting with Andrew and kicking the vehicle. As James drove off, someone called out that the victim was underneath the car at which time he stopped.

Contrary to the appellants' claim that the victim's body was at the side of James's vehicle, the State offered evidence to show that when James got under the wheel of his car, the victim's body was lying in clear view several feet directly in front of James's vehicle. Other evidence from the State's witnesses showed that when Andrew knocked the victim down, James said to Andrew "get in here and let's go." Also the State's proof established that James's vehicle had accelerated very quickly, as indicated by the marks in the gravel, and after striking the victim, the victim's body was dragged some eighty-seven (87) feet before the vehicle came to rest.

T.C.A. § 39–2412 (Supp.1981) provides:

1. The appellants were indicted separately but were tried together, and while each appealed separately, the single trial transcript filed covers both appeals.

Vehicular homicide is the killing of another by the operation of an automobile, airplane, motorboat, or other motor vehicle:

(a) . . .

(b) As the proximate result of the driver's intoxication as set forth in § 55–10–401. For purposes of this section, "intoxication" shall include alcohol intoxication as defined by § 55–10–408, drug intoxication or both.

Under the proof in this record, the jury was authorized to find that had James not been intoxicated, he could readily have seen the victim lying in front of his vehicle. Also, the evidence warranted the jury in finding that had James been sober, he could have reacted quicker in stopping his vehicle once he was alerted to the fact that the victim was underneath the vehicle, and thus the victim would not have been dragged some eighty-seven (87) feet.

We find that from all the facts of this case, the jury was fully warranted in concluding that the victim's death was the proximate result of James's intoxication. Thus, the proof in this case was more than sufficient to show beyond a reasonable doubt James Mains's guilt of vehicular homicide. *T.R.A.P.* 13(e).

■ Another argument by James Mains is that because the events all took place off the paved portion of the highway, his actions did not fall within the purview of T.C.A. § 39–2412 (Supp.1981), which proscribes the homicide of another as the proximate result of the driver's intoxication "as set forth in T.C.A. § 55–10–401." That section prohibits persons from driving a motor vehicle "on any of the public roads and highways of the state of Tennessee" while under the influence of intoxicants. Thus it is that a person could not be convicted of vehicular homicide unless the homicide occurred at a place where the driver could have been convicted of drunken driving.

According to the evidence, all of the operations of the vehicle that were involved in the victim's death occurred on a wide shoulder next to the highway. This area was referred to by some of the witnesses as a "pull-out place" and was described by one officer as being two hundred to three hundred feet long and wide enough for two or three cars to park side by side. This officer also testified the area was part of the "state highway right of way."

The word "highway" is defined for the purposes of the drunken driving statute as: "The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." T.C.A. § 55–8–101(20) (Supp.1981).

The term "public highway" has been described by our Supreme Court as "such a passageway as any and all members of the public have an absolute right to use as distinguished from a permissive privilege of using same." *Standard Life Insurance v. Hughes*, 203 Tenn. 636, 642, 315 S.W.2d 239, 242 (1958). Other states have held that the "shoulder" of a highway is included in the term "highway." *State v. Fuchs*, 219 N.W.2d 842, 845 (N.D.1974); *Salinas v. Kahn*, 2 Ariz.App. 181, 407 P.2d 120, 127 (1965). Interpreting a legislative definition very similar to ours cited above, the North Carolina Supreme Court held that the statutory reference to the "entire width" includes everything between the right of way lines of the "highway" for statutory purposes. *Smith v. Powell*, 293 N.C. 342, 238 S.E.2d 137, 140 (1977).

Thus, we conclude that this homicide occurred in an area that was part of a "public highway," and that under these facts the appellant James Mains could have been convicted of drunken driving under T.C.A. § 55–10–401 (Supp.1981). Since this is true, then it follows that he is culpable for this vehicular homicide which occurred at such location.

We find no merit to the complaints of appellant James Mains.

■ Further, we find that the evidence is sufficient to support the conviction of appellant Andrew Mains for aiding and abetting vehicular homicide.

■ All persons present, aiding and abetting, or ready and consenting to aid and abet in any criminal offense, shall be deemed principal offenders and punished as such. T.C.A. § 39–109 (1975). Before one can be guilty as an aider and abettor, there must be some evidence, at least circumstantial, that he participated in the crime. *Flippin v. State*, 211 Tenn. 507, 365 S.W.2d 895 (1963); *Hembree v. State*, 546 S.W.2d 235 (Tenn.Cr.App.1976).

In *Eager v. State*, 205 Tenn. 156, 325 S.W.2d 815 (1959), our Supreme Court, in upholding convictions of both the driver-owner (Beverly Eager) and the passenger (Howard Hill) for involuntary manslaughter resulting from the operation of Eager's automobile where the proof showed that both defendants were intoxicated, said:

> Thus it is that when one sits by the side of another and permits him without protest to operate the vehicle in a state of intoxication as the jury was clearly warranted that these people were doing herein, the one sitting by is as guilty as the man at the wheel. 205 Tenn. at 169, 325 S.W.2d at 821.

The above language from *Eager* should be considered along with language used by Chief Justice Neal in his concurring opinion in that case pointing out that where nothing else appears, the mere presence of a passenger in an automobile involved in a homicide would not make the passenger an aider and abettor to the culpable driver. Chief Justice Neal wrote:

> We can readily visualize a situation where one might be present in a car, and be more or less under the influence of an intoxicant, who should not be held to be guilty as one who aids and abets in the wrong of a drunken chauffeur. In all such cases the party accused of crime on the theory that he aids and abets another in a criminal transaction, and even a common law act of negligence, the State must show that he not only failed to protest against the alleged wrongs but that he had an ample opportunity to do so, and finally that he was in some manner a participant in the wrongful act, which brought about the death or injury to another.

. . . . .

Thus as between Hill and his co-defendant there was a voluntary association in a night of drunken revelry, she driving an automobile with Hill's permission, if not his actual encouragement, from one beer tavern to another, wholly indifferent to any consequential injury to others. In so doing each was cooperating with the other in an unlawful act and are equally guilty of this crime. 205 Tenn. at 172–73, 325 S.W.2d at 823 (Neal, C. J., concurring).

When the appellant Andrew Mains's actions in the present case are considered in light of the above quoted language from *Eager*, we find that his guilt as an aider and abettor to his brother James in this vehicular homicide is established. Andrew and James had voluntarily participated in a drunken spree with each other for several hours leading up to the fatal event. It was Andrew's own actions in twice knocking down the victim that caused the victim's body to be placed in a position of peril in front of James's vehicle. As we have stated, a sober James could have seen the victim's body in front of the vehicle. Likewise, had Andrew not been intoxicated, he could well have advised James that the victim was lying in front of the vehicle. We are not impressed with Andrew's attempt to show that he was forced into the vehicle by James. Other evidence convinces us that Andrew entered the vehicle without protest and that he was acting in concert with James in attempting to leave the scene.

In short, we find the evidence to be ample to show that Andrew was cooperating with James in connection with the latter's unlawful acts that brought about the victim's death. The jury's verdict finding Andrew guilty beyond a reasonable doubt as an aider and abettor to this vehicular homicide is supported by the evidence. *T.R.A.P.* 13(e).

■ Next, the appellants say the trial court erred in overruling their objection to

a portion of the prosecuting attorney's argument. After the prosecuting attorney said, "If these drunks had run over one of your family here going to church," an objection was entered and overruled by the trial court.

The prosecuting attorney's remaining argument does not appear in the record, so since this isolated comment is out of context we cannot determine what point the prosecuting attorney was attempting to make. However, it would appear that the evidence would not encompass the point that he was attempting to make. At any rate, the isolated comment that is before us is not itself inflammatory or prejudicial. Any error present is harmless, and it did not affect the jury's verdict either as to guilt or punishment. We note that each appellant received a lenient sentence of two (2) years for his offense. T.R.A.P. 36(b); Tenn.R. Crim.P. 52(a).

█ Finally, we find that the trial court did not abuse its discretion in denying probation to the appellants.

The trial court denied probation because of the appellants' prior records, the aggravating circumstances of the offense, and deterrence.

The evidence showed that James Mains had two (2) prior offenses of drunken driving, three (3) prior offenses of public drunkenness and two (2) other misdemeanor violations. These offenses occurred during a period from 1971 to 1978. Andrew Mains had two (2) prior traffic violations, and most significantly, the record shows that on December 22, 1980, less than two (2) months after his conviction of the present offense, he was arrested in North Carolina for drunken driving. By agreement with the prosecutor there, the charge was reduced to reckless driving and he was required to attend a "DUI" school. He admitted having "one drink of brandy" on this occasion and that he registered "point 11" when he took the breathalyzer test. This North Carolina arrest grew out of an accident between this appellant's car and a truck, and a passenger with the defendant was injured.

Further, we point out that on the occasion of the present offense both appellants were highly intoxicated. James Mains's previous punishments for his alcohol related offenses had had no salutary effect on him. Also, even the traumatic experience of being convicted of the present offense did not teach any lesson to Andrew Mains, as attested to by his experience in North Carolina in December, 1980.

█ In order to find an abuse of discretion in the denial of probation we must find that there is no substantial evidence to support the conclusion of the trial court. State v. Grear, 568 S.W.2d 285 (Tenn.1978). Where the trial court's conclusion is supported by evidence, as we find that it is here, then we are not at liberty to overturn the trial court's decision. State v. Grear, supra.

We find no reversible error in this case and the judgment as to each appellant is affirmed.

DAUGHTREY and TATUM, JJ., concur.