EAST TENNESSEE, VIRGINIA & GEORGIA RAILROAD
COMPANY v. JENNIE TOPPINS.

1. CHARGE OF COURT. *Abstract propositions.* The charge of the judge to
   the jury should not be made up of general principles and abstract
   propositions, but he should make his charge so directly applicable to
   the facts of the case as to enable the jury to render a correct verdict.

2. SAME. *Railroad. Damages.* In an action by the widow against the
   railroad for killing her husband, it is error to charge the jury that
   in addition to damages which deceased himself ought to have re-
   ceived if he had lived, damage might also be allowed for the depri-
   vation resulting to the parties for whose use the suit is brought.

FROM WASHINGTON.

Appeal in error from the Circuit Court of Wash-
ington county.   N. HACKER, J.

JOHN ALLISON, JR., and W. M. BAXTER for Rail-
road Company.

E. REEVES, S. J. KIRKPATRICK and C. R. VANCE
for Toppins.

MCFARLAND, J., delivered the opinion of the court.

This is an action under our statutes by Jennie Top-
pins, the widow of Geo. W. Toppins, to recover of the
Railroad Company damages for injuries causing her hus-
band's death.

The declaration avers, in substance, that said Toppins
was an employee of the company, and that it was his

Railroad v. Toppins.

duty to inspect the locomotive engines in the repair shop yards, and that while in the line of his duty, in the act of inspecting one of the engines, while the same was being turned on a turn-table, "by reason of the defective construction and inadequate strength, and also the unskilful management of said turn-table by the defendant's employees, who were by defendant's direction moving same, the motion of said turn-table was suddenly stopped, whereby, without fault upon his part, said Toppins was so hurt and wounded that he died. The second count says the injury resulted from the fault of the defendant in suffering the turn table to become out of repair, and by weighting the same beyond its capacity. The other count does not materially vary the statement of the cause of action. Upon the plea of not guilty there was a trial, which resulted in a verdict for the plaintiff for $7,000. A motion for a new trial was overruled and judgment rendered upon the verdict. The defendant took a general bill of exceptions and appealed in error.

There is little or no conflict in the evidence except some apparent conflict in matters of opinion by witnesses who may be regarded as experts. Toppins had been in the defendant's employ about eight years. He did boiler work and general repair about the engines as far as his ability extended. He was under the immediate charge of the master mechanic, Charlie Hodge, and subject to his orders. He was instructed by Hodge to examine all freight engines that should come in the yard between six in the evening and seven in the morning, to see if they needed netting in the smoke

stacks, and if they did to put in new netting or repair the old. In this work one Connells was his assistant. They were each credited with three hours work for every netting put in, without regard to the time they were actually occupied.

On the occasion of the accident an engine known as "Mogul Engine No. 2," had come in, and while it was on the turn-table being turned to be run or backed into the round house, Toppins was standing upon a plank resting on the boiler and one of the hand railings running parallel therewith, which was somewhat lower than the boiler, with hands extended above him examining the smoke stack. While in this attitude the turn-table suddenly stopped, causing Toppins to fall, and from the injuries thus received he died.

The proof makes it reasonably certain that the cause of the sudden stopping of the turn-table was that the pilot of the engine extended outside of the table over the surrounding tracks, and while turning the weight of the front part of the engine caused it to "tilt" down, and the pilot or bolt on the under side struck some of stationary tracks causing the turn-table to stop.

As we have seen, the fault charged upon the company in the declaration is, that the turn-table was defectively constructed and of inadequate strength, that it was suffered to be out of repair and was loaded beyond its capacity, and that the employees engaged in turning the table were unskilful in their management.

It was proven that the turn-table was constructed

in 1869, and that the accident occurred in 1879. At the time the table was constructed the average weight of the engines was from 22 to 35 tons; at the time of the accident from 29 to 37 tons. The engine from which Toppins fell was of the largest size, and something larger than the ordinary engine, and so extended further over the adjacent tracks. Hodge proves that at the time of the accident the table was in reasonable good condition and safe. It was an old style table but was constructed according to the style and plan generally in use at the time of its construction and at the time of the accident. It was used from 12 to 15 times a day. It was built to sustain three times the ordinary weight of an engine, and would turn the engines without danger to life. His evidence also shows that the turn-table will occasionally tilt so as to cause the pilot to strike on the "dead track," and stop the turn-table. That this cannot be prevented without increasing the grade from the adjoining tracks. There was another and better kind of turn-table of recent invention, but it had not come into general use. This is opposed by the testimony of another witness for the plaintiff, who says that if the engine catch on the track it is owing to a defect in the turn table, or the engine or the track. That a turn-table can and ought to be so constructed as to turn clear without catching. He further says that when he left the employ of the company in 1874, Mogul Engine No. 2 could not be balanced on the old turn-table in the condition it then was. Upon the question whether Toppins was in the line of his duty or acting in

obedience to orders in continuing his work while the engine was being turned, Hodge proves that he never gave Toppins any instructions as to where he should examine the stacks and put in the netting. His orders were to examine them all during the night, and the work was very necessary, but the proper place to do the work was in the round house, and in this latter statement all the witnesses agree that speak upon the subject. The average number of engines coming in at night was eight, on an average one would require new netting. . Toppins and his assistant could have done all the work necessary on the engine from which he fell in one hour.

One of the plaintiff's witnesses proves that it was the custom of Toppins to examine the engines at the coal pen, and sometimes he stayed on them while on the turn-table. Another says he had seen him on the engine while on the turn-table once or twice. Ten minutes is proven to be ample time to turn an engine and put in the round house. There is nothing to show that Hodge had any knowledge that Toppins was in the habit of standing upon the engines while they were on the turn-table, and he says he gave no orders making this necessary.

The charge of the trial judge is, in the main, a correct statement of the general principles, but in some respects not applicable to any facts in proof, as for instance, his charge in regard to injuries resulting from the negligence of fellow servants, which he gives in full with all the qualifications established by the decisions of this court, all of which was irrelevant as there

was no proof even tending to show negligence or want of skill upon the part of those engaged in turning the engine. The same remark applies to the charge in reference to machinery purchased from manufacturers containing latent defects which cannot be discovered by the company. etc.

The case made in the proof rest alone upon the ground that the turn-table was not of sufficient size and capacity to allow an engine of the size of the "Mogul No. 2" to be so balanced upon it as to prevent the projecting pilot from sometimes striking the adjacent tracks and stopping the revolution of the table. The charge should have been confined to the case as presented in the proof. But in general it is no ground of reversal that the court has charged without abstract propositions not applicable to any facts in proof. Though this court may reverse upon this ground where they can see the jury have been confused or misled. Several objections have been taken to the charge and rulings of the court upon the evidence, but they are upon matters not vital to the determination of the case.

The strongest criticisms upon the charge is that it is so general—so wanting in direct application to the case presented—that it has resulted in causing the jury to wholly mistake its applications to the facts and render an erroneous verdict. As a general rule, to put a trial judge in error upon this ground, he should be requested to give more specific instructions, and the instructions requested and refused must be properly named and accurate. This is the general rule, yet if

the court can see that the jury have probably been misled by misunderstanding the charge on its application to the facts, a reversal may be had on this ground.

The criticism upon the charge in this respect in the present case, is a just one. It is not the province of the judge to impress any particular view of the facts upon the jury, but it is his province to make his charge so directly applicable to the facts as to enable the jury to render a correct verdict. To leave as little room as possible for them to make mistakes in applying the law to the facts, which they may be very liable to do when they have only general abstract propositions given to them in charge. There ought, if possible, to be no room for misunderstanding the charge on its application, and to this end it ought to be specific and direct.

The charge in this case as already indicated, is full upon the subject of defective machinery, and the necessity upon the company to furnish machinery in accordance with the existing state of the art or as well adapted to the use for which it was intended as the latest models, and all the general principles upon that subject. The jury should have been instructed, in view of the proof, that whatever may have been the character or capacity of the turn-table, if it was sufficient to do the service required without danger to those servants who were required to be present and engaged in or about it at the time, it was sufficient. The company would not be responsible for not having a better turn-table,[a] provided the defects of this one were

Railroad v. Toppins.

not liable to injure any one who was in his proper place.

In this same connection a controling question was whether or not Toppins was not himself responsible for the accident by voluntarily and unnecessarily placing himself in the position of danger, even supposing the turn-table to have been defective?

Upon this question the judge charged the correct general propositions taken from some opinions of this court, that is to say, if the negligence of Toppins was the *proximate* or *efficient* cause of the injury, or he was in equal fault, there could be no recovery, but if notwithstanding he was guilty of some negligence, yet if the negligence of the company was the proximate or efficient cause of the injury, the plaintiff could recover, and the contributory negligence would only go in mitigation of the damages. And further, if Toppins, by reasonable care on his part could have avoided the accident, there could be no recovery. Counsel for the defendant undertook to have more explicit instructions given, but their propositions were not accurately framed, and strictly, the court was not in error for refusing them. It would certainly, however, have been more appropriate, instead of leaving the jury to determine what was the proximate and efficient cause of the injury and what the remote cause, to have said to them that if the turn-table was defective in the particular complained of, still if Toppins' orders from his superior, or the nature or necessities of his employment, or some established and recognized custom of the company did not require him to stand on the engine in

5—VOL. 10.

the position described, at the time it was being turned, and he voluntarily and unnecessarily did so, then that of itself would constitute such contributory negligence as to constitute it the cause of the accident and defeat the recovery, it not being claimed that there was any other or subsequent negligence upon the part of the company. If his standing upon the engine at the time was a matter of his own election, if consistent with his orders and his duty, he could have waited until the engine was stationary before undertaking the work, and if he voluntarily assumed a position which any man of ordinary intelligence could see was one of danger, he must be held to have taken the risk upon himself.

Whether, however, we would reverse for the reasons given, if there was nothing else in the case, we need not say, but the charge contains one positive error. That is to say, the jury were instructed that in addition to the damages which the deceased himself ought to have received if he had lived, damages might also be allowed for the deprivation resulting to the parties for whose use the suit is brought, that is, the widow and children.

This charge was justified by several expressions in the published opinions of this court, but there has always been conflict of opinion upon the question, and we have more recently held the true rule to be that the action is the same in its character, and as to the elements of damages as if death had not resulted and the action had been brought by the injured party himself, and hence, damages to the widow, or next of

kin in their own right, are not to be considered : See *Trafford* v. *Adams Express Company*, 8 Lea, 96; *Fowlks* v. *Nashville & Decatur Railroad Company*, 9 Heis., 829; *Railroad Company* v. *Smith*, MSS. at present term. We need not consider whether this error had any practical effect. It is sufficient for this case that it is error.

Let the judgment be reversed and the cause remanded for a new trial.