BERRYMAN *v.* DILWORTH.

BERRYMAN *v.* ALFORD (two cases).

(*Nashville*, December Term, 1941.)

Opinion filed February 28, 1942.

Rehearing denied April 4, 1942.

WILS DAVIS and L. E. GWINN, both of Memphis, for plaintiff in error.

PAT LYONS and R. G. KINKLE, both of Memphis, for defendant in error.

MR. SPECIAL JUSTICE ALAN M. PREWITT delivered the opinion of the Court.

The writ of *certiorari* has been granted and the case argued at the bar of the Court.

It consists of three actions growing out of an automobile collision, which were tried before the same jury. From verdicts and judgments in favor of the plaintiffs, the defendant Berryman has appealed in error to the Court of Appeals and the latter Court reversed the trial court, holding that the latter could not say as a matter of law that the plaintiffs were the guests of Burkhart, or that they and the other occupants of the car were not engaged in a joint enterprise within the meaning of that term as applicable to the law of negligence so that the contributory negligence of Burkhart, if any, was imputable to the occupants of the car. The Court of Appeals held that these questions should have been submitted to a jury. The latter Court held that the trial judge failed to instruct the jury with respect to the question of joint adventure and refused a special request for an instruction on the subject embodying the defendant's theory, and in this refusal the Court of Appeals held that the trial court committed a vital error against the defendant, since there was material evidence to support his theory.

The collision occurred about 5:30 in the morning on June 12, 1937, at the entrance to Berryman's tourist cabins on the east side of U. S. Highway 61, a short distance south of the City of Memphis. Highway 61 at this point is a four-lane concrete highway, forty feet wide, perfectly straight, and there was an unobstructed view for a half mile in each direction from the scene of the collision. The three plaintiffs were riding in a 1936 Ford sedan, owned and operated by a man named Burkhart, and the car with which the Ford collided was owned and operated by the defendant Berryman, who, at the time of the trial, was confined in the state penitentiary.

Berryman did not testify. There were six people in the Ford car, to-wit, Burkhart and a Mrs. Berry on the front seat, and Alford, Mrs. Burkhart, Mrs. Alford and T. D. Dilworth on the back seat. They had been on an all night party and were on their way home when the collision took place. They were driving north in the east lane of the Highway 61 and struck the rear fender or bumper of the Berryman car as the latter was making a left turn into the entrance of the tourist court. The Ford car was overturned and all of the occupants were thrown out upon the highway. Mrs. Berry was killed instantly and all of the others were rendered unconscious. Berryman was not injured and his car was but slightly damaged.

There were two counts in the plaintiffs' declarations, one charging common law negligence in making a sudden turn to the left in front of the car in which the plaintiffs were riding, and the other charging a violation of the highway statute requiring drivers to give a signal of intent of making a left turn by holding out the hand. The defendant filed pleas of not guilty and contributory negligence in each case. The Court of Appeals states that it was the theory of the plaintiffs that they were guests of Burkhart in his car and that his negligence in operation of the car was not imputable to them; while it was the theory and contention of the defendant that the plaintiffs were engaged in a joint enterprise for pleasure and that Burkhart's negligence would be imputed to them.

The following facts are undisputed. In accordance with a prearranged plan, the three plaintiffs and Burkhart and his wife and one Andy Marler went to a dance and party on the roof of the Catholic Club in Memphis on Saturday night, June 12, 1937. There they met one

Berry and his wife and their sister-in-law, Mrs. Amelia Berry. They arrived at the Club about 10:00. It seems that drinks of all kinds including liquor were served. The proof shows that Dilworth and Marler each took a pint of whiskey and that Burkhart and Alford together took a pint and this was consumed by the parties. They left the Catholic Club in Burkhart's car about 1:30 a. m. and went first to take Marler home on Dempster. Burkhart and Mrs. Berry and Marler were on the front seat, while Alford, Mrs. Burkhart, Mrs. Alford, and Dilworth were on the back seat. After they had taken Marler home, they went to the Gipsy Village, which was a dance hall and eating place on the State line about seven miles south of the city limits. This place was closed and then they went to Cobb's Place, which was a dance hall on the State line. They danced for about an hour and then went to Harbin's Place, where they had breakfast. They left Harbin's about 5:00 to return to their homes in Memphis. It was good daylight. They had driven north on Highway 61 about four miles to the entrance of Berryman's court when the collision occurred. Burkhart, Alford and Dilworth testified that Burkhart was driving the car between fifty-five and sixty miles per hour. There is other testimony indicating that they were traveling at a much greater rate of speed. They came over the crest of a hill at Brooks Avenue about four-tenths of a mile south of Berryman's, and from that point the highway was straight and they had an unimpaired view for almost a mile. There are about twenty or thirty cabins in the Berryman court on the east side of the highway, and the entrance is of concrete and it is thirty-eight feet wide. The Berryman car was at about the center of this entrance, just off the highway, imme-

diately after the collision and it was only slightly damaged. Mr. Burchett, the investigating officer who was called and who went at once to the scene of the collision, testified that the Burkhart car was lying on its side about the center of the highway about seventy-five feet north of the entrance to the tourist court and there were skid marks and marks made by the scraping of metal on concrete from the entrance to the court all the way to where the car was lying, and that these marks began in the lane and went diagonally across the highway to the west side and back to the east side.

Burkhart testified that he was driving the car in the east lane of the highway and that he saw the Berryman car approaching from the north in the west lane and that when Berryman had reached a point almost directly in front of the entrance he made a sudden turn to the left without giving any signal and drove right in front of him into the entrance to the tourist court; that he, Burkhart, was about 150 or 200 feet south of the entrance when he saw Berryman make the turn to the left in front of him, and that he immediately applied his brakes and turned to his left to avoid striking him.

It was the theory of the plaintiffs that they were guests in Burkhart's car and that his negligence, if he was negligent, was not imputable to them. It was the theory of the defendant that the occupants of the car were, by their own testimony, engaged in a joint enterprise for pleasure and that the negligence of Burkhart was imputable to all of them, or that, at least, this question should have been submitted to the jury. The trial court instructed the jury that the plaintiffs were the guests of Burkhart in his car and refused to charge the theory of the defendant that the occupants of the car were engaged in a joint enterprise for pleasure and that the negligence of Burk-

hart was imputable to the plaintiffs. The Court of Appeals in its opinion held that the refusal of the trial judge to charge the jury on the question of the joint enterprise was error, as was the refusal of the trial judge to instruct the jury on the question of intoxication or degree of intoxication of Burkhart, the driver of the car, the plaintiffs knowing that he had been drinking whiskey.

Much has been said about the holding of this Court in *Schwartz* v. *Johnson*, 152 Tenn., 586, 280 S. W., 32, 47 A. L. R., 323. In that case Johnson and Schwartz had been drinking a large quantity of whiskey during the afternoon and that night about ten o'clock Johnson ran the automobile in which Schwartz was riding into a truck, killing Schwartz. In the Schwartz case the Court of Appeals was of the opinion that the boys were engaged in a joint adventure and there should have been a directed verdict for the defendant. However, when the case reached this Court, Mr. Chief Justice Green said:

"We doubt if this is a case of joint enterprise, in which the negligence of the driver of the car in respect to its operation could be imputed to his companion. The car belonged to the elder Johnson, who allowed it to be used by his son, and the son was running the car. *It does not appear that the Schwartz boy was undertaking to direct the operation of the car, or had any authority so to do.* A witness who saw the car just before the collision said that Schwartz was sitting at the side of young Johnson, not interfering with the driving of the latter. Other circumstances appear in the proof, which it is useless to detail, and from all of this we are not able to conclude that young Schwartz was anything more than the guest of young Johnson, riding in a car of which the latter had full control.

"Under such proof, there is no joint adventure. In a joint enterprise, in order to impute the negligence of one of the parties to the other, each must have authority to control the means or agencies employed to execute the common purpose. *Nesbit* v. *Town of Garner*, 75 Iowa, 314, 39 N. W., 516, 1 L. R. A., 152, 9 Am. St. Rep., 486; *Koplitz* v. *St. Paul*, 90 N. W., 794, 86 Minn., 373, 58 L. R. A., 74.

" 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management.' *Cunningham* v. *City of Thief River Falls*, 84 Minn., 21, 86 N. W., 763."

■ The confusion seems to be in defining a joint enterprise. There must not only be a community of interest in the objects or purposes of the undertaking, but also an equal right to direct and govern the movements and conduct of each other with respect thereto.

■ The negligence of the driver of an automobile will not be imputed to an occupant of a car, himself without fault, unless the former be under the control and authority of the latter. *Turnpike Co.* v. *Yates*, 108 Tenn., 428, 429, 67 S. W., 69; *Knoxville Ry. & Light Co.* v. *Vangilder*, 132 Tenn., 487, 178 S. W., 1117, L. R. A., 1916 A, 1111.

■ The principle of the cases holding the negligence of one of the parties to a joint adventure imputable to the other must be that each of the parties is the agent of the other, that each is entitled to direct the other in the prosecution of the common enterprise.

■ We are of the opinion that the principle of joint enterprise cannot be invoked here.

■■ It is further contended that inasmuch as Burkhart and the other members of the party admitted having been drinking whiskey some five or six hours before, the request of the defendant on the question of intoxication or degree thereof should have been submitted to a jury. We are of the opinion that the trial judge was correct in refusing to give this special request, in view of the testimony in this case. The only proof we have is the proof of Burkhart and the parties riding in the car with him. He states that he only took two drinks and to a large measure he is corroborated in this by the other witnesses. However, there is no proof in the record that Burkhart partook of any whiskey after about midnight when the party left the Catholic Club, and there is nothing in the record to indicate that Burkhart was affected to any degree by the liquor he had taken five and a half hours before this collision took place. A party is not entitled to an instruction on a theory not borne out by the evidence. *City of Knoxville* v. *Lively,* 141 Tenn., 22, 206 S. W., 180; *Green* v. *State,* 154 Tenn., 26, 285 S. W., 554.

In the view we take of the case, the judgment of the trial court was correct and the judgment of the Court of Appeals erroneous, and it results that said judgment of the latter court will be reversed and that of the circuit court affirmed, with costs.

DeHaven, J., dissents.

ON PETITION TO REHEAR.

Mr. Special Justice Alan M. Prewitt delivered the opinion of the Court on petition to rehear.

This case is now before the Court on a petition to rehear. We have carefully examined the petition and brief

in support thereof and find that the matters complained of were thoroughly briefed and discussed in oral argument prior to the rendition of the opinion in this case.

. The defendant below in his petition to rehear seems to rely on *Schwartz* v. *Johnson,* 152 Tenn., 586, 280 S. W., 32, 47 A. L. R., 323, on the ground that plaintiffs and Burkhart at the time of the collision were engaged in a joint enterprise. In that case the automobile belonged to Jeff D. Johnson and was being used and driven by his young son, Jeff D. Johnson, Jr., at the time of the collision. He was accompanied by the deceased, Edward Schwartz, and it seems they were just riding around in the car drinking whiskey, visiting picture shows, and otherwise enjoying themselves until about 10:00 o'clock at night. The proof showed in that case that both the young boys were drunk at the time of the wreck or intoxicated to the extent that this materially affected the driving of the Johnson boy. The car belonged to young Johnson's father and the deceased was simply riding around with him as were the plaintiffs in this case in the Burkhart car. This Court held that Schwartz and Johnson were not engaged in a joint enterprise and that the Court of Appeals was in error in so holding.

It is next complained that the trial judge should have granted a special charge on the matter of the intoxication of Burkhart. This was gone into in the original opinion. The Court found that Burkhart had had two drinks of liquor about midnight and there was no evidence that he had anything else to drink before the collision. The collision occurred after daylight the next morning. The testimony of the occupants of the car showed that Burkhart was not intoxicated or under the influence of liquor

at the time of the collision. There is no evidence in the record to justify a special charge on this point.

It results that the petition to rehear will be denied.

DeHaven, J., dissents.

### DISSENTING OPINION.

Mr. Justice DeHaven delivered the dissenting opinion.

In my opinion, the petition to rehear should be granted and the judgment of the Court of Appeals reversing the trial judge should be affirmed.

The trial judge, among other things, charged the jury as follows: ''Now, it is my opinion, and I so charge you, that the plaintiffs in this case were guests in the automobile in which they were riding, guests of the driver.''

The Court of Appeals said in its opinion:

''Under the proof in this case we cannot say as a matter of law that the plaintiffs were the guests of Burkhart, or that they and the other occupants of the car were not engaged in a joint enterprise within the meaning of that term as applicable to the law of negligence, so that the contributory negligence of Burkhart, if any, was imputable to the plaintiffs and the other occupants of the car. We think these questions should have been submitted to the jury.''

The trial judge was without constitutional power to instruct the jury that plaintiffs were guests riding in the car of Burkhart, if there was any material evidence on which the jury could have found that they, together with Burkhart, were engaged in a joint enterprise. As to the status of plaintiffs on the facts proven on the trial, reasonable minds might differ. The question of whether persons riding in an automobile are engaged in a joint enterprise so that the negligence of the driver will be

imputed to the occupants, is a question for the jury, where there exists a conflict in the evidence on the question of whether the occupants were guests, or were engaged in a common enterprise, or where, from the undisputed evidence, different conclusions might be drawn from the evidence on this question.

There is evidence that the occupants of the Burkhart car assembled at the Catholic Club, by prior agreement, for the purpose of eating, dancing and drinking whisky; that the party left the Catholic Club at about 1:00 or 1:30 o'clock in the morning in the car of Burkhart, by agreement, to go to other places of amusement to eat and dance; that the party thereafter visited several roadhouses, and about four or five o'clock in the morning, the party went to a roadhouse south of Memphis, for breakfast; that while traveling at a high rate of speed over a four-lane highway, just after this breakfast, the collision with defendant's car occurred. Burkhart admits having had two drinks of whisky earlier in the night, the other members of the party say that all of them had taken as many as four or five drinks of whisky.

The jury might have concluded from the evidence that all of the occupants of the car, under the circumstances shown in the evidence, were equally interested in the object and purpose of the meanderings from night club to night club and the trip south of Memphis for breakfast, and that all had a right to a voice in the selection of the places to which the party would go and the route and speed of travel.

It is true that Burkhart was the owner of the car and the member of the party actually driving it, but in so doing the jury could have found that he was merely acting as agent for all the other occupants of the car. The

fortuitous circumstance that Burkhart was driving the car was not sufficient of itself to change the status of the other occupants of the car into that of guests, if other material evidence showed that their status was that of persons engaged in a common enterprise.

The jury might have found from the evidence that the plaintiffs and the other occupants of the car had confederated together for the purpose of engaging in a night of revelry and thus that a community of interest existed in the objects and purposes of their traveling to and fro over the highways during the hours of the night.

It is uniformly held that a mere guest *having no voice in directing and governing the movements of the automobile* cannot be said to be engaged in a joint adventure with the driver within the meaning of the law of negligence, so as to bar recovery from a third party for injuries sustained on account of the latter's negligence, though the one with whom the guest was riding was guilty of contributory negligence. *Schwartz* v. *Johnson,* 152 Tenn., 586, 280 S. W., 32, 47 A. L. R., 323; Annotation, 48 A. L. R., 1077, 1078.

A different rule applies, however, where the occupants are engaged in a common purpose with right to direct the movements of the car. In 5 Am. Jur., p. 788, it is stated:

"Again, where all the occupants of the car are engaged in the common purpose of a pleasure drive *and each might direct the movements or operation of the car,* the negligence of the driver is imputed to them in an action to recover damages for injuries against the owner of another car which collided with the one in which they were riding." (Italics ours.)

In the light of the evidence and the applicable law, it

was error for the trial judge to charge the jury that plaintiffs were guests in the car of Burkhart. The status of the plaintiffs should have been left for the decision of the jury.