MRS. ORFIE WILSON, widow of Charles Daniel Wilson, Deceased, Plaintiff-in-Error,

*v.*

HUBERT TRANBARGER, *d/b/a* Tranbarger Trucking Company, Defendant-in-Error.

WILLIAM H. CATE, Administrator of the Estate of Nathan Jerome Pierce, Plaintiff-in-Error,

*v.*

HUBERT TRANBARGER, d/b/a Tranbarger Trucking Company, Defendant-in-Error.

402 S.W.2d 449.

(*Knoxville,* September Term, 1964.)

Opinion filed June 9, 1965.

Petition for Rehearing Denied September 7, 1965.

Second Motion for Rehearing Denied November 3, 1965.

JENKINS & JENKINS, Knoxville, SMOOT, WRIGHT & CATE, Kingsport, AUBREY JENKINS, Knoxville, SHELBY W. SMOOT, Kingsport, of counsel, for plaintiffs in error.

WILSON, WORLEY & GAMBLE, Kingsport, for defendant in error.

212

Mr. Justice Chattin delivered the opinion of the Court.

These lawsuits grew out of a collision between a 1955 Oldsmobile owned and operated by Etta Mae Pierce, Deceased, in which Charles Daniel Wilson and Nathan Jerome Pierce, both deceased, were riding; and a truck loaded with gravel owned by Hubert Tranbarger, doing business as Tranbarger Trucking Company, which was at the time operated by Shurrals Barker on the business of the owner as his employee.

All three of the occupants of the car were killed in the accident. The accident occurred on October 20, 1962. There have been two trials. These two cases were consolidated with a third case in which the Administrator of the Estate of Etta Mae Pierce, Deceased, had sued the defendant, Tranbarger. The jury returned verdicts in substantial amounts in favor of the two plaintiffs herein,

but returned a verdict of not guilty in the third case of the Administrator of the Estate of Etta Mae Pierce, Deceased.

Defendant filed motions for a new trial which the trial court granted in the two cases which we have under consideration. Although defendant listed nineteen grounds in each of his motions, the trial court sustained only four and overruled the remaining grounds.

Plaintiffs preserved a wayside bill of exceptions. The second trial resulted in verdicts for defendant, which were approved by the trial judge and judgments entered thereon.

Plaintiffs perfected an appeal to the Court of Appeals as to both trials.

When the suits reached the Court of Appeals, defendant filed a motion to strike the wayside bill of exceptions on the ground it was incomplete in that some twenty-nine exhibits had been used in the first trial and none of these exhibits had been authenticated by the trial judge and ordered filed as a part of the wayside bill of exceptions.

The Court of Appeals sustained this motion and affirmed the action of the trial judge in granting a new trial. That Court then proceeded to consider the record and assignments of error at the second trial and affirmed the judgments in favor of defendant.

We have granted plaintiffs' petition for certiorari.

Plaintiffs have assigned as error the action of the Court of Appeals in striking the wayside bill of exceptions and affirming the action of the trial judge in granting the new trial.

It is first urged in support of the assignment that when the trial judge signed the wayside bill of exceptions which contained the statement, ''these were all of the proceedings had and evidence introduced in the trial of these cases,'' he, in fact, authenticated each of the exhibits because the court reporter had marked ''Ex,'' the number of the exhibit and the date thereon; and the exhibits could be traced to their proper places in the bill of exceptions by the number and date of each.

None of the exhibits used in the first trial are attached to the wayside bill of exceptions. There are some sixteen items in a large brown envelope consisting of photos, plats, criminal warrants, and other documents upon which is written ''Ex,'' a number and a date. None of these exhibits show they were filed by the Clerk in the trial court. Nor do any of them bear any identification or authentication by the trial judge. Likewise, there is nothing on the envelope containing them to show they were ever ordered filed collectively by the trial judge nor that they were filed by the clerk of that court. It was the duty of the trial judge to examine the exhibits and to authenticate each in such a manner to make their identity certain and order them filed.

''In order to make extraneous matters a part of the record, they must be examined by the trial judge, and authenticated by his signature in such manner as to make their identity certain. Parts of a bill of exceptions may be in the form of exhibits to be inserted in their proper places according to the directions given therein; but all of the bill of exceptions, whether in one or more documents, must be present and examined when it is signed by the judge, and the several papers to be copied must be so marked as exhibits that no

mistake in their identity can be made, and it must not be left to the clerk, or other person, to determine what constitutes any part of the record. When extrinsic matters, which can only be made part of the record by bill of exceptions, appear in the transcript without proper authentication, they cannot be considered by an appellate court, but will be stricken out when called to its attention. *Battier v. State,* 114 Tenn. 563, 86 S.W. 711; *Railway & Light Co. v. Marlin,* 117 Tenn. 698, 99 S.W. 367; *Wynne v. Edwards,* 7 Humph. 418, 26 Tenn. 418, 419; *Ivy v. Bain,* 2 Tenn.Civ.App. 626; *Cosmopolitan Life Insurance Co. v. Woodward,* 7 Tenn. App. 394; *Hayes & Chunn v. Holland,* 11 Tenn.App. 490." *Frierson v. Smithson,* 21 Tenn.App. 591, 113 S.W.2d 778 (1937).

"It is settled by repeated decisions of our Supreme Court that the contents of a bill of exceptions cannot be considered for any purpose by appellate court unless it affirmatively appears that it was authenticated by the trial judge and filed with the clerk within the time allowed by law. *Jackson v. Bell,* 143 Tenn. 452, 455, 226 S.W. 207; *Hinton v. Sun Life Insurance Co.,* 110 Tenn. 113, 118, 72 S.W. 118; *Cronan v. State,* 113 Tenn. 539, 542, 82 S.W. 477, *Bundren v. State,* 109 Tenn. 225, 230, 70 S.W. 368; *Wright v. Redd Bros.,* 106 Tenn. 719, 721, 63 S.W. 1120; *Jones v. Moore,* 106 Tenn. 188, 190, 61 S.W. 81; *Muse v. State,* 106 Tenn. 181, 183, 61 S.W. 80.

"This rule, of course, applied to the entire bill of exceptions, and, therefore, in order to make exhibits a part of the bill of exceptions it must affirmatively. appear that they were authenticated as such by the trial judge and filed by the clerk within the prescribed

period." *Cosmopolitan Life Insurance Company v. Woodard,* 7 Tenn.App. 394 (1920).

"The rule which we deduce from the cases relied on by appellees, and from other cases therein cited, or which we have found by independent research, is that notwithstanding a recital in a bill of exceptions that it contains all of the evidence, if it affirmatively appears that other evidence was introduced in the lower court, which either was or might have been material, and where consideration of the evidence is material to the issues raised on appeal, the recital in the bill of exceptions that it contains all the evidence will be ignored and the judgment of the lower court affirmed." *State for Use and Benefit of Henderson County ex rel. Hanover v. Stewart,* 46 Tenn.App. 75, 326 S.W.2d 688 (1958).

It is further insisted by virtue of T.C.A. 27-104 it is not now necessary exhibits introduced as evidence in law cases tried on oral testimony be included in a bill of exceptions in order to be considered in the appellate courts as a part of the evidence.

T.C.A. 27-104 provides in part:

"In suits at law removed to the Court of Appeals or Supreme Court, depositions read and exhibits introduced as evidence at the trial shall be a part of the record and need not be included in the bill of exceptions, but shall be reviewed and examined along with all other evidence."

■ When this statute is construed in pari materia with T.C.A. 27-302 and T.C.A. 27-303, it is obvious the statute applies only to cases tried on depositions and

exhibits and not to cases tried on oral testimony before a jury, a trial judge or a chancellor. See *Rose v. Third Nat. Bank,* 27 Tenn.App. 553, 183 S.W.2d 1 (1944); *Rose v. Brown,* 176 Tenn. 429, 143 S.W.2d 303 (1940).

It is then insisted that since Counsel for defendant approved the wayside bill of exceptions by affixing their signatures thereto, this is an affirmative showing the wayside bill of exceptions contained all the evidence presented to the jury. Plaintiffs rely upon the cases of *Grider v. Fiske,* 174 Tenn. 243, 124 S.W.2d 709 (1939); and *Pennington v. General Motors Corp.,* 49 Tenn.App. 240, 354 S.W.2d 479 (1961) for this contention. We cannot agree. Neither of those cases had under consideration the authentication and identification of an exhibit as a part of the bill of exceptions.

It is next urged that T.C.A. 27-110 supports the contention of plaintiffs the signing of the wayside bill of exceptions by the trial judge is sufficient authentication of the exhibits thereto.

That statute provides:

"The certificate of approval of the trial judge upon said bill of exceptions or wayside bill of exceptions shall be sufficient leave to file same, when filed within thirty (30) days after the order or action which occasioned its filing, or an extension thereof.

"Where any bills of exception or wayside bills of exception including exhibits to either, bear the authentication of the trial judge or chancellor and have been filed with the clerk of the trial court within the time allowed, it shall be presumed that same were authenticated by the trial judge or chancellor prior to the filing thereof."

None of the exhibits are authenticated by the trial judge. Nor do any of them show they have been filed with the clerk of the court.

◼ This statute has been construed to create a presumption that bills of exceptions which wear the authentication of the trial judge without the date thereof and filed with the clerk within the time allowed were authenticated prior to the filing thereof. *Pennington v. General Motors Corp.*, supra. We are unable to construe the statute as insisted on by plaintiffs.

Finally, it is the contention of plaintiffs, in any event, the exhibits are not material to a determination of the assignment of error the trial court erred in sustaining defendant's motions for a new trial on the four grounds upon which he based his ruling. They cite and rely upon the cases of *Zanola v. Hall*, 43 Tenn.App. 298, 307 S.W. 2d 491 (1957); *Van Dyke v. Inman*, 50 Tenn.App. 493, 362 S.W.2d 795 (1962); *Cambria Coal Company v. Daugherty*, 161 Tenn. 457, 33 S.W.2d 71 (1930); and *State for Use and Benefit of Henderson ex rel. Hanover v. Stewart*, 46 Tenn.App. 75, 326 S.W.2d 688 (1959). These cases are authority for the proposition that where evidence immaterial to the issues to be considered on appeal, or could not possibly shed any light on those issues, does not appear in the bill of exceptions and the bill of exceptions is complete in all other respects, the appellate courts will not strike the bill of exceptions. The court in neither of those cases had under consideration the question of the propriety of a trial judge in granting or refusing a new trial preserved by a wayside bill of exceptions.

◼ If we were limited to a consideration of only the four grounds upon which the trial judge granted the

new trial, then we would probably agree to this argument. But we think we must consider all the grounds of the motions for a new trial and in doing so we would have to consider all the evidence introduced upon the trial.

"In the present case, it appears that the defendant in error did set out fully and specifically in the court below the several grounds on which he asked for a new trial. In such a case the party is entitled to have considered in this court all of his grounds assigned below, and, if any one of them is found sufficient to justify the action of the circuit judge in granting the new trial, that action should be affirmed, although the judge erroneously based his decision upon some other ground." *Citizens' Rapid Transit Company v. Dozier,* 110 Tenn. 98, 72 S.W. 963 (1902); *Wileman v. Mayor and Aldermen of Town of Tullahoma,* 29 Tenn.App. 172, 195 S.W.2d 325 (1946); *Chesapeake, Ohio and Southwestern Railroad Company v. Higgins,* 85 Tenn. 620, 4 S.W. 47 (1887).

■ In determining whether any ground of the motions should have been sustained, it would be necessary for us to consider all the evidence. The wayside bill of exceptions being incomplete, we must conclusively presume the action of the trial judge in granting the motions on the first trial was proper.

We conclude we must affirm the action of the Court of Appeals in striking the wayside bill of exceptions.

We now consider the second trial. Plaintiffs' declarations contain two counts: the first count alleged common law negligence of the employee of defendant, Shurrals Barker, in the operation of the truck; the second count

charged the truck was being operated with defective brakes in violation of T.C.A. 59-916, et seq., and reckless driving in violation of T.C.A. 59-858(a).

Defendant, by special pleas, denied his agent or employee was guilty of any negligence which was a direct and proximate cause of the accident; that the negligence of the driver of the automobile was the sole, direct and proximate cause of the accident and resulting injuries and plaintiffs' intestates were guilty of contributory negligence because they knew or should have known she was intoxicated and notwithstanding rode with her in such condition; and that on the occasion of the accident they were joint adventurers, and the negligence of the driver was imputable to them.

At the conclusion of plaintiffs' proof the trial judge directed a verdict for defendant on the second or statutory count. As stated hereinabove, the jury returned a verdict for defendant in both cases. These verdicts were approved by the trial judge.

The accident occurred on a Saturday at approximately twelve thirty P.M., in Sullivan County on the extreme south side of Stone Drive at the intersection of Stone Drive and Deneen Lane. Stone Drive is a four lane highway and runs generally east and west. Deneen Lane runs generally north and south across Stone Drive. It was a clear day and the road was dry.

Plaintiffs' intestates were riding in an automobile owned and operated by Etta Mae Pierce, Deceased. A short while prior to the fatal accident, they were seen in Kingsport. Mrs. Pierce and Nathan Jerome Pierce were seated in the car parked in front of a beer stand. Wilson

was seen coming from the store with a package toward the car.

The two north lanes or west bound lanes of Stone Drive were completely barricaded and the two south lanes were partially blocked because it had not been officially opened for traffic. The barricades were at the east end of Stone Drive or to the west of Kingsport. Thus, a motorist driving west from Kingsport had to go around the barricade to enter Stone Drive.

They were next seen traveling west in the extreme south or left lane of Stone Drive. They passed a car just prior to the accident which was traveling west in the right lane of the two south lanes. The Pierce car was traveling from fifty to sixty miles an hour.

Barker was traveling south on Deneen Lane. He did not stop as he approached the north side of Stone Drive but did look to his left toward Kingsport. The median strip between the north and south lanes of Stone Drive was approximately thirty feet wide. He did not stop the truck at that point before crossing the south lanes of Stone Drive but looked to his right and did not look to his left. He looked straight ahead while traveling across the two south lanes. He was traveling fifteen to twenty miles an hour. He did not see the Oldsmobile and when the cab of the truck had cleared the south lane of Stone Drive the automobile collided with the left side of the truck just to the rear of the cab.

The proof is undisputed Stone Drive was straight and level for about one-fourth of a mile east of Deneen Lane; and there was nothing to have obstructed the view of either driver of the vehicles.

Several broken beer bottles were found in the car, some with caps on and some with caps off.

A medical doctor was traveling behind the Oldsmobile and saw the accident. He examined the three bodies to ascertain whether they were dead. He found all were. He stated in his opinion they had been drinking beer from the odor about their heads. He could not find where any of the beer had splashed on their bodies or clothes.

Although Stone Drive had not been opened for traffic at the time of the accident, motorists had been traveling upon it for a few weeks prior to the collision. It is undisputed Deneen Lane had not been closed to traffic during the construction of Stone Drive and there were no stop signs at this intersection.

There is proof pro and con as to whether Wilson, Pierce, and the driver of the car were drinking before the accident.

One witness, a neighbor of Etta Mae Pierce, and the operator of a store in the neighborhood, stated she had seen her and Nathan Jerome Pierce the morning of the accident and that Mrs. Pierce was drunk and Nathan had been drinking heavily.

Plaintiffs' first assignment of error challenges the action of the trial court and affirmed by the Court of Appeals in refusing to allow the witness, Hubert Wolliver, a highway patrolman, relate a conversation he had with Barker at the scene of the accident some thirty to forty minutes after the accident.

The evidence of Wolliver was to the effect Barker stated his brakes must have failed after the collision since the truck had proceeded some sixty-three feet up a slight incline after the impact.

■ It is the theory of plaintiffs this evidence was material and admissible as a part of the res gestae. We fail to see the materiality of this evidence in view of the fact Barker admitted he did not stop or apply his brakes while crossing Stone Drive. The fact the truck came to rest some distance beyond the point of impact would be no proof the brakes were defective prior to the accident. Nor do we think it was material to plaintiffs' case since Barker admitted he did not apply his brakes at any time while crossing Stone Drive. This evidence being undisputed, we are unable to understand how it can be said the operation of the truck with defective brakes was a proximate cause of accident. If it could be said it was error it was at best harmless. T.C.A. 27-117.

We overrule the assignment.

The second assignment complains of the action of the trial court, affirmed by the Court of Appeals, in refusing to allow plaintiffs to impeach Barker by using his pre-trial deposition.

This question arose when plaintiffs called Barker and used him as their witness. Barker testified on direct testimony as we have pointed out hereinabove.

Plaintiffs have filed as an exhibit the pre-trial deposition of Barker with the statement his answers to questions on pages 28 and 29 of the deposition are contrary to his testimony from the witness stand. We have read these pages of the deposition and all we can find in relation to the testimony of Barker as given on the trial are the following two questions and answers:

"Q. All right, Sir. Now, if you had looked you would have seen it (the car), wouldn't you? Answer

'yes' or 'no.' If you had looked you would have seen it, wouldn't you? Answer 'yes' or 'no.'

"A. Yes, if I had looked close enough I guess I would.

"Q. And the reason you didn't see it was because you didn't look close enough? Answer 'yes' or 'no.' Answer 'yes' or 'no' please, Sir. Answer 'yes' or 'no.'

"A. Yes, Sir."

 We fail to understand how this testimony is contradictory of Barker's testimony at the trial. As we have pointed out above Barker admitted he did not look to his left before proceeding across the south side of Stone Drive and did not see the car prior to the collision.

"The general rule obtains in criminal as well as civil cases, that a party cannot impeach his own witness, but this is subject to the exception that where a party is compelled to call an indispensable witness, or a witness that is hostile taking the party by surprise, such witness may be impeached by the party calling him. * * * In such case the hostility may be shown by the witness himself or otherwise, and he then may be examined as to his contradictory statements; but the impeachment of one's own witness is limited to those cases where his testimony is in direct contradiction to his prior statements, and he cannot be impeached where he is merely reluctant to give testimony or unless the testimony is actually prejudicial." Wharton's Criminal Evidence, Volume 1, Tenth Edition, Section 484A, page 1002; *King v. State,* 187 Tenn. 431, 215 S.W.2d 813 (1948); *Turner v. State,* 188 Tenn. 312, 219 S.W.2d 188 (1949).

■ Barker was not an indispensable witness. There were three eyewitnesses to the accident. He was not hostile. Nor was his testimony at the trial prejudicial to plaintiffs.

We overrule this assignment.

The plaintiffs insist by their third assignment the Court of Appeals erred in affirming the action of the trial court in directing a verdict for defendant on the second, or statutory, count of the declaration.

■ This assignment was not made a ground in plaintiffs' motions for a new trial. By our rules, we are precluded from considering an assignment that was not brought to the attention of the trial judge. Rule 14(5) Supreme Court Rules.

Nevertheless, out of respect for the trial judge and Counsel, we think it only fair to repeat, there is no proof the truck was being operated with the brakes in a defective condition. There is no evidence the brakes were tested after the accident.

Barker testified he had driven the truck all that morning and the brakes had worked well. Neither is there any evidence that the truck was being driven ''in wilful or wanton disregard for the safety of persons or property.''

■ This being true, it was the duty of the trial judge to direct a verdict on the statutory count. *Red Boiling Water Company v. McEwen,* 3 Tenn.Civ.App. 687; *North Memphis Savings Bank v. Union Bridge and Construction Company,* 138 Tenn. 161, 196 S.W. 492 (1917).

By their fourth assignment, plaintiffs contend it was error for the Court of Appeals to hold the action of the

trial court in charging the jury on the doctrine of joint enterprise was harmless error.

The Court of Appeals found there was no proof the occupants in the car were engaged in a joint adventure, but held the charge of this doctrine by the trial judge was harmless error under the facts of the case.

The writer of this opinion has concluded the Court of Appeals was correct in so holding.

The record shows the trial judge thoroughly charged the jury the doctrine of proximate and remote contributory negligence of a guest in an automobile. This charge included the law relative to the negligence of a person who voluntarily rides with an intoxicated driver.

After deliberating for some time, the jury returned to the court room and asked the trial judge to charge them again on the doctrine of remote contributory negligence. The trial judge re-read this part of his charge to the jury. The jury returned to the jury room and when the jury returned a few minutes later to the court room the verdict was announced for defendant in both cases.

Thus, it appears the jury found decedents, Wilson and Pierce, were guilty of proximate contributory negligence in riding with an intoxicated driver. As pointed out, there was evidence pro and con on this issue; and, of course, it was for the jury to determine.

"Where a third person's negligence may have been a proximate cause of the accident and such third person is sued by a motor guest or passenger to recover for ensuing injuries, it is a general rule that, as to such suit, the contributory negligence of the injured occupant affords a good defense." Blashfield's Cyclo-

pedia of Automobile Law and Practice, Permanent Edition, Volume 4, Section 2396, page 540.

"If a person voluntarily rides in a motor vehicle driven by one who is intoxicated and knows, or under the circumstances should know this fact, he is precluded from recovering from the driver or a third person for injuries sustained in an accident if the intoxicated condition of the driver was the proximate cause or one of the proximate causes of the accident producing the injuries in question, either on the theory that he is guilty of contributory negligence, or has assumed the risk of injury." 8 Am. Jur. 2nd, Automobiles and Highway Traffic, Section 537, page 94; 61 C.J.S. Motor Vehicles sec. 492, page 119; see also *Schwartz v. Johnson,* 152 Tenn. 586, 280 S.W. 32, 47 A.L.R. 323 (1925); *Williams v. State,* 209 Tenn. 208, 352 S.W.2d 230 (1961); *Eager v. State,* 205 Tenn. 156, 325 S.W.2d 815 (1958).

Conceding that there is no evidence to sustain the defense the three occupants in the car were joint adventurers and the negligence of the drive was imputable to plaintiffs' intestates, must we assume the jury based its verdict upon such defense in preference to a defense supported by material evidence? The writer of this opinion thinks not. Especially do I think so under the facts and circumstances as shown in this record. The fact the jury requested further instructions on remote contributory negligence clearly indicates to me they were considering the defense of contributory negligence rather than that of imputed negligence. After receiving the additional instructions, the jury, within a very few minutes, returned to the court room and announced the verdict.

In the absence of an affirmative showing that the jury based its verdict upon a defense unsupported by evidence rather than a defense supported by material evidence, this Court will not reverse, the presumption being the judgment appealed from is regular and valid. T.C.A. 27-117; *City Transp. Corp. v. Seckler,* 32 Tenn.App. 661, 225 S.W.2d 288 (1948); *Tennessee Cent. Ry. Co. v. Umenstetter,* 155 Tenn. 235, 291 S.W. 452 (1927); *Taylor v. Cobble,* 28 Tenn.App. 167, 187 S.W.2d 684 (1945).

As said by this Court, speaking through Chief Justice Green, in the case of *Tennessee Central Railway Company v. Umenstetter,* supra:

"We cannot escape the act of 1911 (T.C.A. 27-117) in disposing of this case. We do not think a mere abstraction of the trial judge in delivering his instructions to the jury invaded any constitutional rights of the parties."

I think the reasoning in the Umenstetter and the other cases cited applies in the case at bar. Not only is there no affirmative showing the jury based its verdict upon the defense of imputed negligence but to the contrary the record affirmatively indicates the jury based it upon the defense of contributory negligence. Moreover, there is a presumption the judgment appealed from is regular and valid in every respect.

Accordingly, I am of the opinion the judgment of the trial court and that of the Court of Appeals should be affirmed.

However, my four associates, Burnett, Chief Justice, White, Dyer, and Holmes, Justices, do not concur in that part of the foregoing opinion in which it is held the charge of the trial judge to the jury on the doctrine

of joint enterprise, under the facts, constitutes harmless error. It is their opinion this charge of the trial judge was prejudicial to the plaintiffs' rights and constitutes reversible error under the facts of the case.

Hence, the judgments of the trial court and the Court of Appeals are reversed and the cause remanded for a new trial.

On Petition to Rehear

PER CURIAM.

Counsel for the trucking company have filed herein a very courteous, vigorous and intelligent petition to rehear. It is said that the majority of this Court overlooked T.C.A. sec. 20-1318, which in effect requires the application of the general verdict in favor of the trucking company in this case, and prohibits this Court from depriving the trucking company of its verdict where any defensive plea in issue was supported by evidence and was submitted to the jury under proper instructions.

The argument is made that, under all prior decisions of this Court and the Court of Appeals, a rule has been established that where there are more than two theories of action, or defenses, upon which the parties are at issue, a general verdict will stand if it can be supported on the basis of any one of them, regardless of error in a jury instruction pertaining to the others.

This statute (T.C.A. sec. 20-1318) reads, as follows:

"A general verdict, although it may not in terms answer every issue joined, is nevertheless held to embrace every issue, unless exception is taken at the term at which the verdict is rendered."

■ This section must be read *in pari materia* with the preceding section, T.C.A. sec. 20-1317, which reads as follows:

"If any counts in a declaration are good, a verdict for entire damages shall be applied to such good counts."

Probably the first reported decision particularly applying these Code Sections is that of *Tennessee Central Ry. Co. v. Umenstetter,* 155 Tenn. 235, 291 S.W. 452, which according to the petition here has been cited by other reported decisions at least twenty-seven times. The Umenstetter case was a suit based on a common law count and a statutory count against the railroad. There, this Court, since there was evidence of the violation of the statutory count even though there was none as to the common law count, applied the statute and affirmed the verdict. This was a case wherein there were two counts in the declaration. The Court in this case after citing two or three old criminal cases states the gist of what this statute means when it said:

"In all these cases the court can see that the merits have been reached without any real prejudice to the rights of the defendant."

Thus it is, when cases come before this Court as particularly in *Hammons v. Walker Hauling Co.,* 196 Tenn. 26, 263 S.W.2d 753, the Court may, and does, make a distinction in the application of the general verdict if it is clear to the Court that the merits of the case have been reached without prejudice to the plaintiffs herein.

In the Hammons case there was a directed verdict as to certain defendants therein, and upon appeal the Court

of Appeals applied the statute now in question to these directed verdicts, holding that the general verdict against Hammons in favor of Walker must be applied and the verdict below affirmed. This Court reversed for reasons stated in the opinion.

In the present case the principle involved is the same as was involved in the Hammons case, even though the procedural rules as applied in the Hammons case and in this case are different. The Court instructed the jury that if they found that the driver of the vehicle in which the plaintiffs' intestates were guest passengers was guilty of any negligence, which proximately caused the accident, they would *ipso facto* be required to find the plaintiffs guilty of negligence barring their recovery. We, as did the Court of Appeals, found under this record, and we do not think it is controverted, that there was no evidence in this case to support such a legal conclusion. Thus it is, when the court so instructed, it in effect did the same thing as was done in the Hammons case, that is, instructed the jury for the trucking company as against these parties' intestates and took by this instruction any rights these parties had away from the jury.

██ Of course, the harmless error statute, T.C.A. sec. 27-117, clearly shows that such an instruction is not harmless, and when the question of reversible error depends upon the facts and circumstances of each case, as it does here, the Court must reverse. See *Espitia v. State,* 199 Tenn. 696, 288 S.W.2d 731. In other words where there is an error committed which is not harmless, it is the obligation of this Court to reverse the matter for proper consideration under proper instructions. This was in effect the reason for the reversal in *McClard v. Reid,* 190 Tenn. 337, 299 S.W.2d 505. In the McClard case

the trial judge had instructed the jury that, if the defendant was guilty of negligence which proximately caused the accident, then they would not consider any remote contributory negligence on the part of the plaintiff. This Court held that this instruction was erroneous, required a reversal of the trial court's judgment, and held that the harmless error statute (T.C.A. sec. 27-117) did not preclude a reversal in view of the erroneous nature of the court's charge.

We find nothing upon the face of the Code Section in question (T.C.A. sec. 20-1318) which indicates a legislative intent to make such general verdict applicable in favor of the defendant whose liability was not being considered by the jury returning the general verdict in question. In other words, here the trial judge by this erroneous instruction told them in effect not to consider the rights of these parties if the person they were riding with was guilty of negligence which proximately caused the accident or proximately contributed thereto. It seems logical therefore to conclude that the courts are not authorized to reach such an intention into this Code Section. The Legislature certainly did not intend by this Code Section to deprive these parties of their day in court.

This record shows that whether or not these guest passengers were guilty of their own individual negligence was sharply controverted. The question of whether the parties had been drinking immediately prior to the accident was disputed at the trial by credible evidence. Of course, this made a jury question. There was no evidence of joint adventure one way or the other. Under the charge of the court if the jury found that the driver of

the vehicle in which these parties were riding was guilty of speeding at the time of the accident or was driving on the wrong side of the road or otherwise driving in a reckless manner as claimed by the defendant and further found that the parties had been drinking then the jury, under this erroneous charge, would be required to find for the defendants even though they did not feel that these plaintiffs' intestates were guilty of any independent negligence. Certainly the Legislature never intended by the Code Section in question to require the judiciary under this kind of verdict to apply it to all parties involved under a factual situation as here. Thus it is after full consideration the petition to rehear must be denied.

BURNETT, CHIEF JUSTICE, and WHITE and DYER, JUSTICES, concur.

MR. JUSTICE CHATTIN.

For reasons stated in the original opinion, I respectfully dissent.

### On Second Petition to Rehear

PER CURIAM.

We have permitted counsel for Hubert Tranbarger d/b/a Tranbarger Trucking Company to file a second petition to rehear herein. This was done for the reason that we felt, under the circumstances on which the case was remanded, counsel probably did not have ample opportunity to set forth his contentions fully in his first petition to rehear. Counsel has filed herein a very forceful, courteous and dignified second petition to rehear, which we have considered fully.

In this petition counsel contends that a rehearing should be granted for three reasons, one, that in sustain-

234

ing the assignment of error relating to the instructions of the trial court on the theory of joint venture plaintiffs below failed to comply with Rule 14 (3) and Rule 14 (5) of this Court.

In reply to the assignments of error in the Court of Appeals it was contended by the present counsel that the Rules of the Court of Appeals, which are in effect similar to those above mentioned, were not complied with. The Court of Appeals though without enforcing these rules considered this question and held that even though there was "no basis in the facts of the case" for an instruction on joint venture such an instruction would merely be harmless error. When the petition for certiorari was applied for, this same question was presented in the petition by assignment number 5 that the trial court erred in giving such an instruction. In answering this assignment counsel does not raise the question that the plaintiffs failed to comply with Rule 14 (3) and Rule 14 (5) but merely contents himself with saying:

"As to the question of joint venture, there was evidence that the three occupants of the automobile had a common purpose—a drinking party, and there was proof that two of the occupants were in business together. However, even if not applicable to this case, the giving of such instruction was not affirmative error, but would constitute merely a harmless abstract instruction, which under T.C.A. sec. 27-117 would not constitute grounds for a reversal."

Thus it is argued by the respondent of this second petition to rehear that the question now presented as the first contention herein should not be considered because petitioners did not object when the plaintiffs did

not set forth the charge in their motion for a new trial and in their assignments of error herein. We, of course, do not mean to relax our Rules here attempted to be applied, but under the circumstances in this case we do not deem them applicable and feel that the question should be considered on its merits.

By the second assignment in this second petition to rehear counsel contends in effect that the Court failed to recognize the actual instruction given by the trial court in regard to the defense of joint venture and urges us to reevaluate our opinion regarding this instruction. The instruction is copied in full herein, and the argument is again made relative to this instruction that the defense of joint venture, which it clearly sets forth, would only be applicable provided the jury found certain facts to exist. It is argued, too, since this Court and the Court of Appeals have held that there was no evidence to support this instruction it must be presumed that the jury recognized this fact and ignored the court's instruction regarding this particular phase of the law.

We reversed the Court of Appeals and remanded this case for a new trial on this feature of the case, because we felt that under the factual situation herein, the giving of this charge on joint venture constituted reversible error and was not a mere abstract proposition of the law even though the charge correctly stated the law. We have found, as well as the Court of Appeals, that there is no evidence of joint venture.

It has been held time and again that:

"The instructions given by the judge to the jury should be directly applicable to the facts in evidence. There must be testimony tending to raise the question

in order for an issue to be submitted to the jury. An instruction which assumes that there is evidence tending to prove certain facts, when there is no such evidence, is erroneous. *Goodall v. Thurman,* 38 Tenn. 209. *East Tenn. V. & G. R. Co. v. Toppins,* 78 Tenn. 58. *Three States Lumber Co. v. Blanks,* 118 Tenn. 627, 102 S.W. 79. *Allen v. Melton,* 20 Tenn.App. 387, 99 S.W.2d 219.'' *Mayor and Aldermen of Town of Morristown v. Inman,* 47 Tenn.App. 685, 342 S.W.2d 71.

One can find an almost similar language in an opinion by Judge Faw (those of us who have been at the bar a long time are very appreciative of the thoroughness with which Judge Faw wrote his opinions and the number of decisions that he cited supporting his findings) in *Allen v. Melton,* cited in the quotation, supra, at page 400 of 20 Tenn.App., at page 227 of 99 S.W.2d an almost identical statement to that just above quoted, and Judge Faw cites many more decisions supporting that statement. In the Melton case Judge Faw says:

''An instruction which assumes that there is evidence tending to prove certain facts, when there is no such evidence, is erroneous.''

Over the years the courts in applying this rule have more or less stated the rule, and it is a definite rule, that when such abstractions are given in the charge it must appear ''that they may have been so.'' *O'Rourke v. Citizens' St. Ry. Co.,* 103 Tenn. 124, 52 S.W. 872, 46 L.R.A. 614. If, however, such abstractions are hurtful or harmful they constitute reversible error. We think, after reading this record, unquestionably such must appear here because, even in stating an answer to this assignment of error in the petition for certiorari, counsel for

the defendant, as we have shown by the quotation above, more or less attempts to argue here that these parties were together drinking, etc. In other words it is perfectly clear to us, and should be to anyone having practical trial experience, that in arguing cases to the jury it is perfectly natural without violating any niceties or requisites that are required of an advocate in arguing a case, he would in his advocacy argue such things to a jury, and the jury naturally, when they have an instruction of the kind here on this question, would feel that the parties are joint venturers and thus under such an instruction they would unquestionably return a verdict for the defendant. If such an instruction had not been given and instructions properly given as to the duty of a guest, as these parties were herein, then it would present an entirely different question to a jury of laymen.

 We say, too, that this is certainly true when we see by the authorities how the judges, great judges, in considering a question of joint venture have differed over the years. One example alone is that of the case of *Schwartz v. Johnson,* 152 Tenn. 586, 280 S.W. 32, 47 A.L.R. 323, as cited by the Court of Appeals in their holding that the facts here did not present a joint venture. This was a case (*Schwartz v. Johnson,* supra) where the Court of Civil Appeals had held that it was a joint venture. This Court in *Schwartz v. Johnson,* supra, held that it was not a joint venture. Then, too, there is the case of *Berryman v. Dilworth,* 178 Tenn. 566, 160 S.W.2d 899, wherein this Court again held that under a state of facts similar to those herein there was not a joint venture and affirmed the judgment of a jury returning a verdict for the plaintiffs. Under such a situation, and the authorities being as they are, we cannot escape

the proposition that such an instruction as this in the absence of proof of joint venture did not constitute harmful and reversible error.

Lastly, it is argued that we should for reasons heretofore set forth in their second petition to rehear again consider T.C.A. sec. 20-1318 and sec. 27-117, and that, under these sections, we should affirm the judgment of the Court of Appeals. We think that these statutes have been sufficiently considered by us in our opinion on the first petition to rehear and that this obviously and admittedly is an attempt to reargue the questions that we have previously considered. We have again thought about the matter and do not think anything else is necessary to be said in this particular.

For reasons herein stated the second petition to rehear is overruled.

BURNETT, CHIEF JUSTICE, and WHITE and DYER, JUSTICES, concur.

MR. JUSTICE CHATTIN.

For reasons stated in the original opinion, I respectfully dissent.